*911
 
 OPINION
 

 Per Curiam:
 

 Appellant Eulogio Flores robbed a cab driver at gunpoint, stole the cab and shot at the cab driver before fleeing the scene. He was apprehended after a lengthy police chase. A jury found Flores guilty of one count of robbery with a deadly weapon and one count of attempted murder with a deadly weapon. At trial, the district court permitted the jurors to submit written questions for the witnesses.
 

 Flores appeals his conviction, claiming that the practice of jury-questioning violated NRS 175.401 and his Sixth Amendment right to a fair trial by an impartial jury.
 

 Flores argues that this practice caused jurors to abandon their constitutional role as neutral and detached fact-finders and assume an advocacy role.
 

 Before the presentation of evidence at Flores’s trial, the district court instructed jurors to write their unanswered questions on a piece of paper and pass the paper to the bailiff without disturbing the proceedings. During a recess, the district court reviewed the questions and entertained the objections of counsel. The district court then deemed several jury questions admissible, which counsel then asked the witnesses.
 

 
 *912
 
 Although this court has not addressed the issue of whether jurors may submit questions for witnesses at trial, we welcome this opportunity to condone the practice and discuss its proper implementation in Nevada.
 

 The practice of jury-questioning is firmly rooted in both the common law and American jurisprudence.
 
 See
 
 State v. Kendall, 57 S.E. 340 (N.C. 1907); 3 Sir William Blackstone,
 
 Commentaries on the Laws of England
 
 373 (William D. Lewis ed., 1922) (1765); Michael A. Wolff, Comment,
 
 A Survey of Theory and Use,
 
 55 Mo. L. Rev. 817 (1990). The United States Circuit Courts of Appeal and a majority of state courts have accepted the practice of jury-questioning as a matter within the sound discretion of the trial judge.
 
 See
 
 United States v. Bush, 47 F.3d 511, 514 (2d Cir. 1995);
 
 see, e.g.,
 
 People v. Cummings, 850 P.2d 1, 48 (Cal. 1993); State v. Graves, 907 P.2d 963, 967 (Mont. 1995); State v. Johnson, 784 P.2d 1135, 1144-45 (Utah 1989). Many jurisdictions that permit juror questioning celebrate its benefits.
 
 See, e.g.,
 
 United States v. Sutton, 970 F.2d 1001, 1005 (1st Cir. 1992). These benefits include: (1) increased juror attentiveness; (2) the potential for jurors to more completely comprehend the evidence; (3) the opportunity for trial attorneys to better understand the jurors’ thought processes and their perception of the case weaknesses; and (4) greater juror satisfaction regarding their role at trial. State v. Taylor, 544 P.2d 714, 716-17 (Ariz. 1976); Commonwealth v. Urena, 632 N.E.2d 1200, 1204 n.5 (Mass. 1994).
 

 The significant advantages associated with jury-questioning must be considered in light of the dangers inherent in the practice. Perhaps the most frequently cited drawbacks of the practice are that jurors may assign disproportionate weight to evidence elicited in response to their own questions and that jury-questioning transforms the adversary process into an inquisitorial process. DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512 (4th Cir. 1985); Morrison v. State, 815 S.W.2d 766 (Tex. Crim. App. 1991). Acting as inquisitors, jurors may stray from their prescribed role as neutral fact-finders and prematurely evaluate the evidence. Sometimes, attorneys refrain from raising objections to juror questions to avoid offending jurors. Inclusion of juror-initiated questions also raises concern that the government may satisfy its burden of proof beyond a reasonable doubt by means of juror-initiated evidence.
 

 Despite these potential disadvantages, we join the majority of jurisdictions which acknowledge the practice of jury-questioning
 
 *913
 
 as an innovation that can significantly enhance the truth-seeking function of the trial process. We hold that allowing juror-inspired questions in a criminal case is not prejudicial per se, but is a matter committed to the sound discretion of the trial court.
 
 Sutton,
 
 970 F.2d at 1005. To minimize the risk of prejudice, however, the practice must be carefully controlled by the court. Accordingly, inclusion of juror questions must incorporate certain procedural safeguards to minimize the attendant risks. These safeguards include: (1) initial jury instructions explaining that questions must be factual in nature and designed to clarify information already presented; (2) the requirement that jurors submit their questions in writing; (3) determinations regarding the admissibility of the questions must be conducted outside the presence of the jury; (4) counsel must have the opportunity to object to each question outside the presence of the jury; (5) an admonition that only questions permissible under the rules of evidence will be asked; (6) counsel is permitted to ask follow-up questions; and (7) an admonition that jurors must not place undue weight on the responses to their questions.
 

 In the case before us, the district court employed the foregoing safeguards. These were sufficient to eliminate the risk of prejudice to Flores. Consequently, we conclude that the practice of juror-questioning, as implemented by the district court here, did not violate Flores’s Sixth Amendment right to trial by a fair and impartial jury.
 

 Flores argues that the jury-questioning violated NRS 175.401(3), which forbids jurors from forming or -expressing opinions about the case before the presentation of all evidence. Flores argues that the jurors’ questions reveal their premature opinions about the case. We disagree. The jury questions are seeking factual information. A proper question does not imply that a juror formed any opinion any more than it does when a judge asks a question. The jurors are given an admonition pursuant to NRS 175.401.
 

 NRS 175.401 states, in pertinent part:
 

 At each adjournment of the court, whether the jurors are permitted to separate or depart for home overnight, or are kept in charge of officers, they must be admonished by the judge or another officer of the court that it is their duty not to:
 

 3. If they have not been charged, form or express any
 
 *914
 
 opinion on any subject connected with the trial until the cause is finally submitted to them.
 

 We must presume that the instructions were followed.
 
 See
 
 Richardson v. Marsh, 481 U.S. 200, 211 (1987).
 

 Accordingly, we affirm the judgment of the district court.
 
 [2]
 

 [2]
 

 The Honorable A. William Maupin, Justice, voluntarily recused himself from participation in the decision of this appeal.