CHRISTOPHER ALLRED, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 40924

July 12, 2004                                        92 P.3d 1246

*Steven G. McGuire,* State Public Defender, and *John D. Augenstein* and *Harriet E. Cummings,* Deputy Public Defenders, Carson City, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Richard W. Sears,* District Attorney, and *Kevin R. Briggs,* Deputy District Attorney, White Pine County, for Respondent.

Before BECKER, AGOSTI and GIBBONS, JJ.

## OPINION

By the Court, GIBBONS, J.:

Following a 2-day trial, a jury unanimously convicted appellant Christopher Allred of one count of battery with substantial bodily harm. The district court imposed on Allred the maximum sentence of 60 months with the possibility of parole after 24 months.

Allred appeals, contending that (1) due to a clerical error, two erroneous written jury instructions were allowed into the jury's deliberations; (2) the court denied Allred a fair trial because jurors questioned the witnesses; (3) the district court denied Allred due process because the prosecutor commented on Allred's failure to testify; (4) there was insufficient evidence for the jury to convict him; and (5) the sentence imposed by the district court constitutes cruel and unusual punishment.

### FACTS

On the night of February 1, 2002, the victim, Scott Fritsche, went to the Liberty Club, a popular night club in Ely. Fritsche was in the bar for hours and drank heavily. Fritsche remembers drinking a few beers and playing shuffle board, but he does not recall anything else until the next morning.

Kristopher Grant, Robin Gregson, Kristen Fisher, and Allred were also at the Liberty Club that night. Fisher was working that night as the bartender at the Liberty Club. Fisher testified that Grant and his fiancée Gregson argued about Gregson's child from another relationship. After Fisher broke up that argument, the atmosphere was calmer. Then, Fritsche began arguing with Grant about a different matter.

At approximately 2 a.m. on February 2, 2002, Fritsche and Grant had an argument. Grant testified that Fritsche was being "too friendly" with Gregson, so Grant started yelling at Fritsche. Grant and Fritsche were inches apart and screaming at each other, but did not engage in a physical altercation. Allred was in the bar during both arguments. Fisher stopped the argument between Fritsche and Grant by escorting Fritsche out of the bar. Allred later went outside with Fritsche. Fisher testified that she watched Grant in the club during the time that Allred went outside with Fritsche.

After escorting Fritsche out, Fisher focused her attention on Grant to allow Fritsche enough time to leave. At that moment, Allred came in the front door of the bar and appeared shaken. Fisher testified that Allred told everyone in the bar that he had been in a fight with Fritsche. Allred told Fisher that "he had gone outside to make sure everything was cool to smooth things over,

make sure there was no hard feelings.'' Allred also told Fisher that Fritsche had attempted to hit him, so Allred "fishhooked"[1] him and punched him once.

Fritsche sustained several injuries from the incident. Fritsche testified that he does not remember arguing with anyone that night, fighting with Allred or leaving the bar. Fritsche only remembers waking up in the hospital experiencing a lot of pain. Specifically, Fritsche testified that he was missing a tooth, his nose was swollen, and his injuries required plastic surgery to remedy the damage. A Las Vegas plastic surgeon performed surgery on Fritsche, installing five titanium plates in his face. Fritsche also obtained two temporary false teeth. Fritsche suffered pain for about 1 1/2 months after the surgery.

Officer Swetich, a deputy sheriff in White Pine County, investigated the altercation. At approximately 3 a.m. on February 2, 2002, Deputy Swetich drove past the Liberty Club and discovered Fritsche lying in the street. Blood covered Fritsche's face, and Deputy Swetich turned Fritsche on his side to prevent him from choking on his blood. Deputy Swetich immediately telephoned emergency services to send an ambulance for medical assistance. People from the Liberty Club then began exiting the building, and Deputy Swetich yelled out, "[D]oes anybody know what happened, who did this to him"? Allred responded that he was responsible.

When Deputy Swetich asked Allred about what had occurred outside the Liberty Club, Allred told him that he broke up a fight between Grant and Fritsche. Allred said that Grant and Fritsche were fighting and after Allred broke up the fight, Fritsche took a swing at Allred. In response, Allred fishhooked Fritsche and punched him once in self-defense. Deputy Swetich then interviewed Grant and informed him of Allred's version of the events. Grant became upset and stated that he did not physically fight with Fritsche. Deputy Swetich then interviewed Allred for a second time and told him that Grant's story conflicted with Allred's story. After being confronted with this information, Allred told Deputy Swetich that he did not break up a fight and that he and Fritsche were alone at the time of the incident. Deputy Swetich suggested that Allred kicked Fritsche. Allred then told Deputy Swetich to analyze his boots to demonstrate his innocence. Deputy Swetich took the boots and sent them to the crime lab; however, the analysis did not yield any significant evidence in support of the prosecution's case.

The State charged Allred by information with one count of battery with substantial bodily harm. During closing arguments, the

---

[1]"Fishhooked'' refers to putting your thumb onto the person's cheek and then squeezing the cheek between the thumb and forefinger.

prosecutor pointed out inconsistencies between what Allred told Fisher and what Allred later told Deputy Swetich. The prosecutor then stated that ''Allred doesn't come forth with an accurate account of how this occurred ever. We get three different accounts told to different people. We never get an accurate account.'' After the jury began deliberations, the jury discovered two additional jury instructions that were not read by the judge. The jury asked the district court whether it should consider the two questions regarding the lesser included offense of battery and the instruction on confession. The district court responded that the jury should not consider those two instructions. Subsequently, the jury found Allred guilty of battery with substantial bodily harm.

The court sentenced Allred to serve a 60-month sentence with the possibility of parole after 24 months. The district court imposed the maximum sentence because Allred had previous drug and alcohol abuse problems, prior arrests, and he severely injured Fritsche. Allred appeals the judgment of conviction.

## DISCUSSION

*Erroneous jury instructions*

Allred argues that he was prejudiced by the jury instructions regarding lesser included offenses and confessions. Specifically, Allred argues that because the district court inadvertently included the two erroneous jury instructions with the other instructions, the court denied him the right to a fair trial. We disagree.

Although we have not previously discussed erroneous jury instructions under similar facts, we have considered erroneous jury instructions under different circumstances.[2] We review the giving of erroneous jury instructions under a harmless error analysis.[3] ''An error is harmless when it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' ''[4] Additionally, we presume that the jury followed the district court's orders and instructions.[5]

After the jury began deliberations in the instant case, the jury submitted a written question to the judge: ''There were 2 pages included in the packet of instructions handed to the jury that were

[2]*See, e.g.,* *Wegner v. State,* 116 Nev. 1149, 1155-56, 14 P.3d 25, 30 (2000); *Collman v. State,* 116 Nev. 687, 722, 7 P.3d 426, 449 (2000).

[3]*Wegner,* 116 Nev. at 1155, 14 P.3d at 30.

[4]*Id.* (quoting *Neder v. United States,* 527 U.S. 1, 18 (1999)).

[5]*Leonard v. State,* 117 Nev. 53, 66, 17 P.3d 397, 405 (2001).

not read by the judge or included in the original instructions. Can the jury consider these pages?'' The two jury instructions were (1) an instruction on the lesser included offense of battery and (2) an instruction on a jury's ability to find a defendant's confession or admission involuntary and therefore disregard it. Allred never gave a confession, only the inconsistent statements to the police. On the record, the district court discussed this question with Allred's counsel. The district court then answered the jury: ''These two instructions were erroneously placed in the packet given to the jury. The jury shall not consider these two instructions, and must only use the original instructions given by the court.''

We must presume the jury disregarded the erroneous jury instructions pursuant to the direction from the district court. Allred also failed to show how he was prejudiced by the two erroneous instructions. Additionally, the verdict form contained only the option of battery with substantial bodily harm. There was no option allowing the jury to choose the lesser included offense of battery. Because the district court cured this clerical mistake by its direction to disregard the erroneous instructions, we conclude that the two erroneous jury instructions constitute harmless error because a rational jury would have found Allred guilty absent the mistake.

*Jury questioning*

Allred argues that the district court denied him due process because the court permitted the jury to present written questions to Deputy Swetich. Allred urges us to reconsider our decision in *Flores v. State,* which allows jurors to pose questions to witnesses.[6] We conclude that the district court did not deny Allred due process by following *Flores,* and we reaffirm our holding in *Flores.*

Nevada has joined ''the majority of jurisdictions which acknowledge the practice of jury-questioning as an innovation that can significantly enhance the truth-seeking function of the trial process.''[7] In *Flores,* we held that ''allowing juror-inspired questions in a criminal case is not prejudicial per se, but is a matter committed to the sound discretion of the trial court.''[8] Because there is a risk of prejudice, we mandated that the practice be carefully controlled by the district court. Accordingly, the district court must take certain procedural safeguards to minimize the attendant risks. These safeguards include:

---

[6]114 Nev. 910, 912-13, 965 P.2d 901, 902 (1998).

[7]*Id.*

[8]*Id.* at 913, 965 P.2d at 902.

(1) initial jury instructions explaining that questions must be factual in nature and designed to clarify information already presented; (2) the requirement that jurors submit their questions in writing; (3) determinations regarding the admissibility of the questions must be conducted outside the presence of the jury; (4) counsel must have the opportunity to object to each question outside the presence of the jury; (5) an admonition that only questions permissible under the rules of evidence will be asked; (6) counsel is permitted to ask follow-up questions; and (7) an admonition that jurors must not place undue weight on the responses to their questions.[9]

In the instant case, the district court allowed juror questioning and instructed the jurors to write down questions for the witnesses and submit them to the court for review. The district court also admonished the jury not to draw any negative inference if the court did not ask a particular question. Additionally, the district court admonished the jury not to presume what the answer of an unasked question would be. After the district court dismissed the jury, the court reviewed each submitted question with counsel.

One of the juror questions asked, "Could the suspect have changed his boots?" Allred's counsel objected to the question as speculative. The district court disagreed and stated that the juror was confused about whether there was time for Allred to change his boots. After the jury returned to the courtroom, the district court asked, "Could the suspect have changed his boots from the time of the fight to the time you collected the boots?" Deputy Swetich testified that it was possible for Allred to have changed the boots because there were twelve hours between the altercation and when he collected the boots from Allred.

Allred argues that the district court prejudiced him by allowing this question because it called for speculation and the court did not follow the safeguards established in *Flores*. Allred contends that the district court failed to admonish the jurors not to place undue weight on the responses to the juror questions. We disagree.

In this case, the district court complied with most of the juror-questioning procedures discussed in *Flores* by (1) instructing the jury not to draw any negative inference if the court did not ask a particular question, (2) instructing the jury not to presume what the answer would be for a question the court did not ask, (3) requiring written juror questions, (4) discussing the admissibility of juror questions and affording counsel the opportunity to object outside the presence of the jury, and (5) allowing counsel to

---

[9]*Id.* at 913, 965 P.2d at 902-03.

ask follow-up questions. Additionally, there is no indication in the record that defense counsel requested additional admonitions or other procedural safeguards for juror questioning. We conclude that the district court erred by not instructing the jury, pursuant to *Flores,* that jurors must not place undue weight on responses to their questions but that the district court otherwise substantially complied with the requisite safeguards of *Flores.* We conclude the failure to give the one admonition is harmless error.

*Prosecutor's comment*

▉▉▉▉▉▉

Allred argues that the prosecutor's statement during closing arguments regarding inconsistencies in Allred's statements to the police constituted a comment on Allred's failure to testify, in violation of his due process rights. We disagree.

▉▉▉▉▉▉

Agreeing with the United States Court of Appeals for the Ninth Circuit, we have stated that "as long as a prosecutor's remarks do not call attention to a defendant's failure to testify, it is permissible to comment on the failure of the defense to counter or explain evidence presented."[10] Additionally, "[a] prosecutor's comments should be viewed in context, and 'a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.'"[11]

▉▉▉▉▉▉

During closing arguments in the instant case, the prosecutor referred to the two different accounts Allred gave to Deputy Swetich. The prosecutor then said, "Allred doesn't come forth with an accurate account of how this occurred ever." Allred's attorney failed to object to the prosecutor's statement during closing argument. Failure to object to an issue at trial will generally preclude appellate review of that issue unless there is plain error.[12] The prosecutor's statement, when considered in context, was not improper. The prosecutor did not directly comment on Allred's failure to testify. Instead, the prosecutor commented on the evidence that Deputy Swetich presented about Allred's conflicting accounts of what occurred on the night of the altercation. We conclude that the jury would not have considered the prosecutor's comments as being directed at Allred's failure to testify. For the above reasons, we determine that the prosecutor's comments were not improper and,

---

[10]*Evans v. State,* 117 Nev. 609, 631, 28 P.3d 498, 513 (2001).

[11]*Knight v. State,* 116 Nev. 140, 144-45, 993 P.2d 67, 71 (2000) (quoting *United States v. Young,* 470 U.S. 1, 11 (1985)).

[12]*Leonard,* 117 Nev. at 63, 17 P.3d at 403.

even if they could be considered a comment on Allred's failure to testify, did not constitute plain error; therefore, Allred's argument lacks merit.

## Demonstrative exhibits

Allred concedes that the prosecutor may use demonstrative exhibits during closing arguments; however, he argues that the prosecutor's exhibits in this case were irrelevant, highly prejudicial, and not supported by the evidence. We disagree.

The district court reviewed the State's three proposed demonstrative exhibits outside the presence of the jury. The first exhibit included an admitted photograph of Fritsche's hands, with the notation "physical evidence of a battery," and listed the injuries Fritsche sustained during the altercation. The second exhibit included an admitted photograph of Fritsche's face, with the "physical evidence of a battery" notation and contained check marks for his facial injuries. The third exhibit listed the injuries Fritsche suffered on the rest of his body.

After Allred's attorney objected that the demonstrative exhibits' content was prejudicial, the district court thoroughly examined each exhibit. The district court concluded that the notations, "physical evidence of a battery," were argumentative and ordered the prosecutor to remove them from the three exhibits. Additionally, the district court ordered the third exhibit altered to properly reflect Fritsche's injuries. The district court also ordered the prosecutor to remove the notation "post battery injuries" from the third exhibit, as well as the comparison between Allred's injuries to Fritsche's injuries. Apart from those changes, the district court indicated that the exhibits were consistent with the testimony and the pictures had already been admitted into evidence. Because the exhibits used during closing argument, as edited, were proper, Allred's argument lacks merit.

## Sufficiency of the evidence

Allred argues that the jury relied on insufficient evidence to convict him. We disagree.

When reviewing evidence supporting a jury's verdict, this court asks "whether the jury, acting reasonably, could have been convinced of the defendant's guilt beyond a reasonable doubt by the evidence it had a right to consider."[13]

[13]*Bridges v. State,* 116 Nev. 752, 764, 6 P.3d 1000, 1009 (2000).

In the instant case, the prosecutor presented substantial evidence to the jury that demonstrated Allred's guilt. Deputy Swetich testified that when he found Fritsche on the street, "both of his eyes were swollen . . . [and] he had blood all over his face." Deputy Swetich testified that Fritsche had blood coming from his nose and mouth and that he turned Fritsche over so he would not choke on his blood. Additionally, Deputy Swetich testified that Allred told him he had caused Fritsche's injuries. The next day, Deputy Swetich described Fritsche's injuries, stating that "both of his eyes appeared that they were turning black. They were swollen. He had cuts and scrapes below the eyes. His lips had been cut. And he was missing a couple of . . . front teeth. And he had some bruising on his chest area." Fisher, the bartender, testified that when Allred returned to the bar, he appeared disturbed. Fisher further testified that Allred told her that he had punched Fritsche. Because substantial evidence exists that Allred battered Fritsche, we conclude that a reasonable jury could find Allred guilty beyond a reasonable doubt.

*Cruel and unusual punishment*

Allred contends that his sentence of 60 months in prison constitutes cruel and unusual punishment, in violation of the Eighth Amendment of the United States Constitution and Article 1 of the Nevada Constitution. We disagree.

The Eighth Amendment of the United States Constitution "forbids [an] extreme sentence[ ] that [is] 'grossly disproportionate' to the crime."[14] Despite its harshness, "[a] sentence within the statutory limits is not 'cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience.' "[15] Additionally, we afford the district court wide discretion in its sentencing decision.[16] We will refrain from interfering with the sentence imposed "[s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence."[17]

---

[14]*Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (plurality opinion) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)).

[15]*Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (quoting *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979)).

[16]*Martinez v. State*, 114 Nev. 735, 737-38, 961 P.2d 143, 145 (1998).

[17]*Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976).

In the instant case, the sentence imposed was within the parameters provided by the relevant statutes.[18] Additionally, Allred does not allege that NRS 200.481 is unconstitutional. Allred argues that the district court should have followed the Department of Parole and Probation's recommendation of 12 to 32 months. The district court considered Parole and Probation's recommendation, but declined to follow it. The district court considered the facts of the case, including the criminal justice system's goals of deterrence, rehabilitation, and punishment. Based on the evidence and the information available, the district court imposed on Allred a 60-month prison sentence with parole eligibility after 24 months. Because Allred's sentence was within the statutory guidelines and does not shock the conscience, Allred's sentence does not constitute cruel and unusual punishment.

*Prosecutor's misstatement*

Allred argues that his sentence is unfair because, during the sentencing proceeding, the prosecutor recommended that the district court sentence Allred to 24 to 62 months. The maximum sentence for Allred's crime was 60 months.[19] Allred argues that because the prosecutor recommended 2 more months than the statutory maximum, the prosecutor prejudiced Allred. We disagree.

It appears that the prosecutor's sentencing recommendation for 2 months over the maximum penalty was a mistake. The prosecutor did not repeat the statement nor was it pervasive during the proceeding. The district court did not sentence Allred to 62 months, and Allred has failed to demonstrate that the prosecutor's misstatement prejudiced him. Because Allred experienced no prejudice by this comment alone, his argument lacks merit.

*Suspect evidence*

Allred argues that the district court relied on highly suspect evidence in sentencing him. Allred specifically refers to a portion of the sentencing hearing where the judge commented that Allred was lucky he did not kill Fritsche "and who knows if Deputy Swetich hadn't pulled up right then." Basically, the district court inferred that if Deputy Swetich had not arrived on the scene, Fritsche might have died because of the severity of his injuries. This state-

---

[18]*See* NRS 193.130(2)(c) (providing for prison term of 1 to 5 years for category C felony); NRS 200.481(2)(b) (providing that battery with substantial bodily harm is a category C felony).

[19]NRS 193.130(2)(c).

ment does not rise to the level of impalpable or highly suspect evidence. Moreover, the record indicates that the district court relied on the facts that Allred had prior criminal activities, prior drug and alcohol abuse, and substantially injured Fritsche. Therefore, this argument lacks merit.

## CONCLUSION

The district court's clerical error in allowing the two erroneous jury instructions into the jury's deliberations was harmless. Under *Flores v. State*,[20] the district court did not err in allowing jurors to present written questions to the witnesses after the court approved those questions. The prosecutor did not comment on Allred's failure to testify. Additionally, the State presented sufficient evidence at trial for a jury to convict Allred. Finally, Allred was not prejudiced by the prosecutor's recommendation of a 62-month prison sentence and the sentence imposed was not based on impalpable or highly suspect evidence and does not constitute cruel and unusual punishment. We, therefore, affirm the district court's judgment.[21]

AGOSTI and BECKER, JJ., concur.

---

[20]114 Nev. 910, 965 P.2d 901 (1998).

[21]We have considered Allred's other arguments and conclude they are without merit.