141 Nev., Advance Opinion 57

# IN THE SUPREME COURT OF THE STATE OF NEVADA

GEORGIO MONT SER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 87890

**FILED**

NOV 20 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of attempted second-degree kidnapping, second-degree kidnapping with the use of a deadly weapon, residential burglary while in the possession of a firearm, assault with a deadly weapon, battery with substantial bodily harm, and stalking. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

*Affirmed.*

Nancy L. Lemcke, Public Defender, and William M. Waters, Chief Deputy Public Defender, Clark County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Jonathan VanBoskerck, Chief Deputy District Attorney, and Elan A. Eldar, Deputy District Attorney, Clark County,
for Respondent.

_____

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

25-50710

*OPINION*

By the Court, BELL, J.:

Nevada law authorizes a private person to make a citizen's arrest when a felony has in fact been committed and the arrestor has reasonable cause to believe the person to be arrested committed the felony. NRS 171.126(3). For a felony-based citizen's arrest, a private person may enter a building to make the arrest so long as they announce themselves, demand admittance, and state the purpose for which admittance is desired. NRS 171.138.

Appellant Georgio Mont Ser attempted a citizen's arrest of Charlotte and Lucy Campbell for alleged distribution of obscene materials in interstate commerce, a federal felony. Ser entered the home and an altercation occurred, leading to Ser's arrest and indictment on criminal charges. At trial, the district court prevented Ser from introducing most evidence of Charlotte and Lucy's alleged felonious activity, and Ser was convicted of attempted second-degree kidnapping, second-degree kidnapping with the use of a deadly weapon, residential burglary while in the possession of a firearm, assault with a deadly weapon, battery with substantial bodily harm, and stalking.

We affirm Ser's conviction because NRS 171.126 does not authorize citizens' arrests for federal felonies committed outside the arrestor's presence. Under the circumstances of this case, Ser was not entitled to a citizen's arrest defense. We also hold that district courts are not required to give lesser-included-offense instructions sua sponte, and failure to request such an instruction results in the party's forfeiture of the issue on appeal. Accordingly, we overrule *Lisby v. State*, 82 Nev. 183, 414 P.2d 592 (1966), to the extent it required district courts to sua sponte give

SUPREME COURT
OF
NEVADA

(O) 1947A

a lesser-included-offense jury instruction when evidence may demonstrate that the defendant is not guilty of the greater offense but the same evidence would support a finding of guilt of the lesser offense.

*FACTS AND PROCEDURAL HISTORY*

Charlotte and Lucy Campbell were a married couple. Both worked making pornographic films. Charlotte posted some of the films on social media. Georgio Mont Ser came across several of the pornographic videos on Charlotte's social media account and believed the videos violated the federal law prohibiting distribution of obscene materials in interstate commerce, 18 U.S.C. § 1465. After reporting the videos to several law enforcement agencies and receiving no affirmative response, Ser decided to arrest the Campbells himself. Ser located the Campbells' residence and went to the home three times.

The first time, Ser equipped himself with a taser, handcuffs, duct tape, and pepper spray and disguised himself as a pizza delivery worker. When Lucy answered the door, Ser attempted to pull Lucy out of the house and detain her. The Campbells shut the door and called the police, who later arrested Ser. Ser was released without any charges but was warned to stay away from the Campbell home. On the second visit, Ser dropped some documents on the Campbells' doorstep but did not attempt to contact Charlotte and Lucy.

By Ser's third and final excursion to the Campbell home, Charlotte and Lucy had divorced, and Lucy had moved out. Charlotte was at home with her boyfriend when Ser knocked on the window attempting to get their attention. Charlotte and her boyfriend heard the noise, and Charlotte went upstairs to investigate and to retrieve her firearm. Ser entered the home through a side door and went upstairs, where he encountered Charlotte. Charlotte pointed her firearm at Ser. Ser tackled

Supreme Court
of
Nevada

(0) 1947A

3

Charlotte and punched her in the face numerous times, attempting to wrestle away the gun. The firearm discharged several times during the struggle, though no one was seriously injured. Ser eventually wrested the firearm from Charlotte, but Charlotte was able to unload the firearm while it was in Ser's hands. Charlotte went downstairs and called 911. After the 911 call, everyone went outside and waited for the police, who arrested Ser.

At trial, Ser attempted to introduce evidence that he was making a lawful citizen's arrest for violation of federal obscenity law. The district court concluded Ser could not make a citizen's arrest for a federal crime, had not laid a sufficient foundation that Charlotte and Lucy had committed a felony to assert a citizen's arrest defense, and could have only entered the Campbell home if there were exigent circumstances present. Based on these conclusions, the district court excluded most of Ser's evidence supporting his citizen's arrest defense, which focused on Charlotte and Lucy's allegedly felonious pornographic activities. Ser was convicted and now appeals.

## DISCUSSION

*A private person may not make a citizen's arrest for a federal felony committed outside the arrestor's presence*

Ser's primary challenge is that he did not receive a fair trial because he was unable to mount a defense. The district court excluded most of the evidence of Charlotte and Lucy's alleged felonious activities. The excluded evidence encompassed descriptions of the pornographic videos Ser viewed, cross-examination about the production or distribution of pornography, and redaction of Ser's recorded police interview. The district court also refused to give a jury instruction on citizen's arrest. Normally, defendants asserting an affirmative defense bear the burden of producing evidence supporting that defense. *See State v. Colosimo*, 122 Nev. 950, 957,

142 P.3d 352, 357 (2006). District courts must allow a defendant to introduce admissible evidence supporting their defense, and when the defendant introduces evidence supporting their affirmative defense, the district court must instruct the jury on that defense. *Crawford v. State*, 121 Nev. 744, 751, 121 P.3d 582, 586 (2005). And typically, such evidentiary decisions and the settling of jury instructions are left to the district court's discretion. *See Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009) (addressing evidentiary decisions); *Crawford*, 121 Nev. at 748, 121 P.3d at 585 (addressing jury instructions). But here, where Ser's entitlement to introduce evidence and present jury instructions hinges on a question of statutory interpretation, we will review the district court's interpretation of the statute de novo. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). Interpreting Nevada's citizen's arrest statute, we conclude Ser was not legally entitled to make a citizen's arrest for a federal felony committed outside his presence, and we conclude the affirmative defense Ser sought was unavailable to him.

NRS 171.126 authorizes private persons to make arrests in three circumstances:

> 1. For a public offense committed or attempted in the person's presence.
>
> 2. When the person arrested has committed a felony, although not in the person's presence.
>
> 3. When a felony has been in fact committed, and the private person has reasonable cause for believing the person arrested to have committed it.

We have not previously had cause to consider this statute.

Charlotte and Lucy committed no crime in Ser's presence. They did not produce obscenity in Ser's presence, nor did they distribute it in his presence. *See United States v. Chiaradio*, 684 F.3d 265, 282 (1st Cir. 2012)

(concluding "distribution" occurs at the moment "[w]hen an individual consciously makes files available for others"). Because the distribution did not occur in Ser's presence, for Ser to have a valid defense, Charlotte and Lucy must have committed a felony within the meaning of NRS 171.126. Ser asserts that Charlotte and Lucy have committed the crime of distribution of obscenity, which is a misdemeanor under Nevada law but a federal felony. *Compare* NRS 201.249 (defining distribution of obscenity as a misdemeanor), *with* 18 U.S.C. § 1465 (penalizing distribution of obscenity in interstate commerce with up to five years imprisonment); 18 U.S.C. § 3559(a)(4) (defining crimes with a maximum penalty of five years imprisonment as Class D felonies). Accordingly, Ser could make a citizen's arrest only if NRS 171.126 applies to both state and federal felonies.

In defining the scope of citizen's arrest, we "look[ ] first to the plain language of the statute." *Clay v. Eighth Jud. Dist. Ct.*, 129 Nev. 445, 451, 305 P.3d 898, 902 (2013). The plain language of NRS 171.126 offers no definition of felony. But that does not end the inquiry because "this court will interpret a rule or statute in harmony with other rules and statutes." *Id.* (internal quotation marks omitted). And "[w]e presume that the Legislature enacted the statute with full knowledge of existing statutes relating to the same subject." *Nev. Att'y for Injured Workers v. Nev. Self-Insurers Ass'n*, 126 Nev. 74, 84, 225 P.3d 1265, 1271 (2010) (internal quotation marks omitted).

The Nevada Legislature defines a felony as any "crime which may be punished by death or by imprisonment *in the state prison*." NRS 193.120(2) (emphasis added). Further, NRS 171.178 provides the procedures to be followed after effectuating a citizen's arrest. Following a citizen's arrest, a private person must deliver the arrestee to a peace officer,

who then "shall take the arrested person without unnecessary delay before the nearest available magistrate empowered to commit persons charged with offenses against the laws of the State of Nevada." NRS 171.178(2). Thus, both our definition of felonies and the procedures to be followed in the event of a citizen's arrest contemplate crimes against the State of Nevada—not crimes against any other sovereign. Reading our citizen's arrest statute in harmony with these provisions requires us to conclude that when the crime is committed outside the arrestor's presence, a citizen's arrest is only authorized for Nevada felonies, and Ser was not legally entitled to make a citizen's arrest for a perceived violation of federal obscenity law. Thus, it was not error for the district court to exclude evidence of Charlotte and Lucy's alleged felony, nor was it error to deny Ser a jury instruction on citizen's arrest.

While we affirm Ser's conviction, we have deep concerns about the breadth of Nevada's citizen's arrest statutes. Allowing private citizens to make arrests at all creates a great deal of risk, both for would-be arrestors and for arrestees. *See* Ira P. Robbins, *Vilifying the Vigilante: A Narrowed Scope of Citizen's Arrest*, 25 Cornell J. L. & Pub. Pol'y 557, 572-73 (2016) ("Unlike police officers, private citizens . . . have not been trained extensively."); *see also* Note, *The Law of Citizen's Arrest*, 65 Colum. L. Rev. 502, 503 (1965) ("[L]imitation on apprehension by private citizens seems compelled by the danger that resistance to arrest will result in injury or disorder."). The justification for allowing private citizens to make often-risky arrests has eroded over time. The need for citizen's arrest laws arose long before the advent of professional police. Chad Flanders et al., *The Puzzling Persistence of Citizen's Arrest Laws and the Need to Revisit Them*, 64 How. L.J. 161, 174-75 (2020). The conditions under which citizen's arrest

SUPREME COURT
OF
NEVADA

(O) 1947A

7

was a necessity, or even a duty, simply no longer exist "in a society that places the primary responsibility for apprehending criminals in the hands of professional law-enforcement officers." *Id.* at 175 (quoting Note, *The Law of Citizen's Arrest, supra,* at 505).

Of particular concern is the statute in play here, NRS 171.138, which allows a private person to "break open a door or window of the house, structure or other place of concealment in which the person to be arrested is . . . after having demanded admittance and explained the purpose for which admittance is desired." While a police officer's ability to enter a private dwelling is circumscribed by the Fourth Amendment to the United States Constitution and Article 1, Section 18 of the Nevada Constitution, neither of those constitutional provisions apply to private citizens. *Radkus v. State,* 90 Nev. 406, 408, 528 P.2d 697, 698 (1974) (collecting cases). Allowing private, untrained individuals to break into homes at any hour of the day or night presents serious safety concerns. And these concerns are not ameliorated by the knock-and-announce requirement. If a person bearing no insignia of authority breaks into a person's home, we are unconvinced that announcing the intention to make a citizen's arrest reduces the risk of violence, which is among the main purposes of knock-and-announce provisions. *Hudson v. Michigan,* 547 U.S. 586, 594 (2006). NRS 171.138 thus invites tragic situations in which a homeowner kills or injures a would-be citizen's arrestor who is acting as the law presently allows. Limiting the breadth of this statute, however, falls to the Nevada Legislature.

*When a defendant does not request a jury instruction on a lesser-included offense, we review for plain error*

Ser argues the district court should have instructed the jury on the lesser-included offense of false imprisonment. Ser did not request a

false imprisonment instruction, which would normally preclude all but plain error review. *Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018). But Ser argues he did not forfeit the issue for appellate review because the district court should have given the instruction sua sponte, relying on our decision in *Lisby v. State*, 82 Nev. 183, 414 P.2d 592 (1966). In *Lisby*, we outlined three scenarios in which lesser-included-offense instructions must be given or may be denied. Two of the three concern instructions requested by a defendant and are inapplicable here. Relevant is *Lisby*'s third scenario, "that in which there is evidence which would absolve the defendant from guilt of the greater offense or degree but would support a finding of guilt of the lesser offense or degree. The instruction is mandatory, without request." *Id.* at 187, 414 P.2d at 595 (citing *State v. Moore*, 48 Nev. 405, 414-15, 233 P. 523, 526 (1925)).

Ser asserts there was evidence that would acquit him of kidnapping but convict him of false imprisonment, such as his desire only to bring Charlotte and Lucy to the police, leaving the district court with a sua sponte duty to provide a false-imprisonment instruction to the jury. According to Ser, because the district court had the sua sponte duty to give a false-imprisonment instruction, we should review for harmless error rather than plain error, as we do for limiting instructions on the use of other act evidence. *See Tavares v. State*, 117 Nev. 725, 730-32, 30 P.3d 1128, 1131-32 (2001). We now hold that a defendant must request a lesser-included-offense jury instruction to preserve a challenge to the district court's failure to provide that instruction for appeal. In doing so, we overrule the portion of *Lisby* that required a district court to sua sponte instruct the jury on lesser-included offenses.

We reach this decision for two reasons. First, whether to ask for a lesser-included-offense instruction is a tactical choice properly reserved for defendants and their counsel. A defendant may wish to forgo a lesser-included-offense instruction, forcing the State to prove a more difficult charge beyond a reasonable doubt. Of course, should a defendant make this tactical choice, they may not then argue on appeal that the district court erred by failing to provide an unrequested instruction.

Second, although courts must give lesser-included instructions when appropriate and when requested, requiring courts to give jury instructions sua sponte imposes a high burden on courts. It is helpful to distinguish lesser-included instructions from *Tavares* instructions, where we impose a sua sponte instructional duty on district courts. A district court must give a *Tavares* instruction in a single, clearly delineated situation when admitting other act evidence. *Id.* at 731, 30 P.3d at 1132. If the district court admits the evidence, it must give the accompanying instruction. In the case of lesser-included-offense jury instructions, district courts would have to discern every lesser-included offense for every crime charged, then weigh the evidence to determine whether the evidence supports acquittal on the higher charge and conviction on the lower. This is substantially more onerous than our mandate in *Tavares*, and we place this burden where it properly lies—with the defendant. When the defense fails to request an instruction, as Ser did here, and challenges omission of that instruction on appeal, we will consider the issue forfeited and review only for plain error.

"To amount to plain error, the error must be so unmistakable that it is apparent from a casual inspection of the record." *Martinorellan v. State*, 131 Nev. 43, 49, 343 P.3d 590, 593 (2015) (internal quotation marks

Supreme Court
OF
Nevada

(O) 1947A

omitted). "In addition, the defendant [must] demonstrate[ ] that the error affected his or her substantial rights, by causing actual prejudice or a miscarriage of justice." *Id.* (alterations in original) (internal quotation marks omitted).

We conclude that the record here does not reveal error. Ser's defense was not that he lacked intent for his crimes, but rather that he was legally justified in his attempts to detain Charlotte and Lucy. Nothing about Ser's case indicates the district court should have provided a false imprisonment instruction. Further, because sufficient evidence supports Ser's conviction for kidnapping, we conclude there was no actual prejudice or miscarriage of justice by failing to give the instruction. *See Crawford,* 121 Nev. at 756-57, 121 P.3d at 590 (concluding that the failure to instruct on a lesser-included offense is harmless when sufficient evidence supports conviction on the higher offense).

*Ser's remaining arguments lack merit*

Ser claims that (1) the district court abused its discretion by declining to ask a witness a question posed by a juror; (2) the district court abused its discretion by denying Ser's motions for a mistrial; and (3) insufficient evidence supports his conviction for attempted second-degree kidnapping, second-degree kidnapping with the use of a deadly weapon, assault with a deadly weapon, and residential burglary while in the possession of a firearm. We conclude these contentions lack merit.

*No authority requires a district court to ask a juror question*

Ser asserts the district court abused its discretion by refusing to ask a witness a question from a juror about Ser's motivation for pursuing a citizen's arrest of Charlotte and Lucy. "[A]llowing juror questions is within the sound discretion of the court." *Vaughn v. State,* 141 Nev., Adv. Op. 6, 563 P.3d 295, 302 (2025). The witness in question was the detective

who interviewed Ser after his arrest. A juror asked for "the defendant's exact or clear reason for wanting to make the citizen's arrest? . . . And did he ever say why he targeted them specifically? Why them?" The district court refused to ask the question, concluding that while the State could introduce Ser's hearsay statements as those of a party opponent, the jury could not pose a question that would elicit a hearsay response.

First, while courts may ask witnesses juror questions, we decline to require a district court to ask any particular question because, as noted, whether to ask a juror question is committed to the discretion of the district court. *See Flores v. State*, 114 Nev. 910, 913, 965 P.2d 901, 902 (1998). Second, within that discretion, district courts may ask only those questions that are proper within the rules of evidence. *See id.* at 913, 965 P.2d at 903 ("[O]nly questions permissible under the rules of evidence will be asked."). The juror's question here asked the State's witness to relay Ser's out-of-court statements, which were hearsay. NRS 51.035. And while the State could have introduced Ser's statements as admissions offered against a party, no mechanism exists for a juror to do so. NRS 51.035(3). Thus, we conclude the district court did not abuse its discretion in declining to ask the juror's question.

*The district court did not abuse its discretion by denying Ser's motions for a mistrial*

Ser contends the district court abused its discretion by denying his motions for a mistrial. Essentially, Ser argues he was unaware, until late in the trial, that he would be prevented from presenting evidence supporting his citizen's arrest defense. "Denial of a motion for mistrial is within the district court's sound discretion, and this court will not overturn a denial absent a clear showing of abuse." *Randolph v. State*, 117 Nev. 970, 981, 36 P.3d 424, 431 (2001).

Ser himself requested that the district court postpone its ruling on the admissibility of descriptions of Charlotte and Lucy's pornography until after his testimony. The court's delayed ruling on the validity of Ser's citizen's arrest defense was at least partially to accommodate Ser. Further, there is always a risk that a trial strategy will be undermined by new evidence, or the exclusion or later unavailability of evidence. *See United States v. Saldarriaga*, 987 F.2d 1526, 1531 (11th Cir. 1993) (upholding denial of a mistrial where the defendant's trial strategy was undermined by the death of a witness the defendant intended to discredit, as outlined in opening statements). A change in circumstances at a trial does not automatically entitle a defendant to a mistrial. We conclude that the district court did not abuse its discretion by denying Ser's motion for a mistrial.

### *The evidence was sufficient to support the conviction*

#### *Sufficient evidence supports Ser's conviction for attempted second-degree kidnapping and second-degree kidnapping with the use of a deadly weapon*

Ser levies three arguments why the State presented insufficient evidence to support his conviction for attempted second-degree kidnapping and second-degree kidnapping with the use of a deadly weapon. In reviewing the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998) (internal quotation marks omitted).

First, Ser contends he lacked the requisite intent to commit kidnapping or attempted kidnapping. Second-degree kidnapping requires the intent to keep a person "detained against the person's will." NRS

200.310(2). While Ser contends he only intended to bring Charlotte and Lucy to the police, there was sufficient evidence for a rational juror to conclude Ser intended to kidnap Charlotte and Lucy. Beginning with Ser's attempted kidnapping on Ser's first visit to the Campbell home, he arrived with a taser, pepper spray, and restraint devices. From that fact alone, a jury could infer Ser had the intent to kidnap Charlotte and Lucy.

As to the kidnapping, while Ser came empty-handed on his third visit to the Campbell home, he did not call the police, Charlotte did, and only after Ser entered the home and fought with Charlotte and her boyfriend. This was after Ser had already been detained for attempting to conduct an unlawful citizen's arrest during his first visit. A rational juror could conclude that by breaking in for the admitted purpose of placing Charlotte in custody, Ser intended to keep Charlotte detained against her will.

Second, Ser asserts any detention of Charlotte, and thus any kidnapping, was merely incidental to other offenses. We have held that evidence will not sustain a kidnapping conviction where any detention is incidental to other crimes and there is no increase in danger to the victims. *Mendoza v. State*, 122 Nev. 267, 272-73, 130 P.3d 176, 179 (2006). Ser's admitted purpose was to take Charlotte and Lucy into custody. Under the facts here, Ser's other crimes—battery, burglary, assault, and stalking—appear incidental to the kidnapping, and we conclude Ser's kidnapping conviction is not invalid simply because the charges arise from facts that included other offenses.

Third, as to the count of second-degree kidnapping with the use of a deadly weapon, Ser argues the evidence does not support the enhancement for use of a deadly weapon because he did not use the firearm

SUPREME COURT
OF
NEVADA

14

(O) 1947A

to detain Charlotte and her boyfriend. Ser took the gun from Charlotte during the altercation in Charlotte's home. Charlotte unloaded the firearm shortly after Ser gained control of it, but "[w]hether the weapon was unloaded or inoperable is . . . irrelevant." *Berry v. State*, 125 Nev. 265, 277, 212 P.3d 1085, 1093 (2009), *abrogated on other grounds by State v. Castaneda*, 126 Nev. 478, 482 n.1, 245 P.3d 550, 553 n.1 (2010). Ser also retained the weapon until everyone moved outside and he overheard Charlotte telling the 911 operator that Ser was still in possession of the weapon. Using a deadly weapon does not require conduct that produces harm, but rather only conduct which "produce[s] a fear of harm or force in the victims." *Allen v. State*, 96 Nev. 334, 336, 609 P.2d 321, 322 (1980), *overruled on other grounds by Berry*, 125 Nev. 265, 212 P.3d 1085. Even though Ser told Charlotte and her boyfriend he did not want to shoot them, a rational juror could still infer that Ser, by retaining the weapon, used it to detain his victims. We conclude sufficient evidence supports Ser's conviction for attempted second-degree kidnapping and second-degree kidnapping with the use of a deadly weapon.

*Sufficient evidence demonstrated Ser's intent to commit assault with a deadly weapon*

Ser asserts that no evidence showed his intent to commit assault with a deadly weapon while he was in possession of Charlotte's firearm. Assault is "[i]ntentionally placing another person in reasonable apprehension of immediate bodily harm." NRS 200.471(1)(a)(2). It is immaterial that the firearm was unloaded for some of the time he had control of the firearm. *State v. Eighth Jud. Dist. Ct. (Bankhead)*, 141 Nev., Adv. Op. 39, 573 P.3d 1254, 1257 (2025) (recognizing that assault with a deadly weapon does not "require[ ] that the weapon be loaded and operable"). Charlotte testified she had to struggle to unload the firearm

once Ser had control of it. Charlotte also testified that Ser pointed the firearm at her during the struggle over the gun, while the gun was still discharging. A rational juror could conclude from this testimony that Ser intended to place Charlotte in imminent apprehension of bodily harm using Charlotte's firearm. Thus, we conclude that sufficient evidence supports Ser's conviction of assault with a deadly weapon.

*The evidence supports Ser's intent to commit residential burglary while in possession of a firearm*

Ser argues he lacked the intent to commit burglary under NRS 205.060(1)(a) because he lacked the intent to commit a felony when he entered the home. As discussed, sufficient evidence showed Ser's intent to kidnap Charlotte, intent that he had upon entering the Campbell home. Because kidnapping is a felony per NRS 200.330, we conclude that the evidence supports Ser's burglary conviction.

*There are no errors to cumulate*

Ser last argues that cumulative error deprived him of a fair trial. We discern no error, and thus "there is nothing to cumulate." *Belcher v. State*, 136 Nev. 261, 279, 464 P.3d 1013, 1031 (2020).

## CONCLUSION

NRS 171.126 does not permit private persons to make an arrest for federal felonies committed outside their presence. Because Ser was not entitled to make a citizen's arrest for Charlotte and Lucy's alleged federal felonious activities, we conclude that the district court did not err by excluding evidence and jury instructions related to those felonies. Nor did the district court's rulings deprive Ser of his constitutional right to mount a defense.

We also overrule *Lisby v. State* to the extent it required district courts to sua sponte provide lesser-included-offense instructions when

evidence may demonstrate that the defendant is not guilty of the greater offense but the same evidence would support a finding of guilt of the lesser offense. Because Ser's other challenges lack merit, we affirm the judgment of conviction.[1]

_____, J.
Bell

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

---

[1]Per IOP 9(e), this opinion has been circulated among all justices of this court, any two of whom, under IOP 13(b), may request en banc review of a case. The two votes needed to require en banc review in the first instance of the question of overruling *Lisby* were not cast.