OPINION
By the Court,
Parraguirre, J. :
In this appeal, we consider whether hearings to determine the admissibility of juror questions sfhould be conducted on the record as part of the procedural safeguards that were prescribed in Flores v. State[1] and whether the failure to comply with these safeguards *929 is reviewable for harmless error. For the reasons set forth below, we require hearings regarding the admissibility of juror questions to be conducted on the record. We also conclude that the failure to properly administer the required procedural safeguards for juror questioning amounts to nonconstitutional trial error, and as such is subject to harmless-error review under NRS 178.598.
In this case, the district court permitted jurors to ask witnesses a number of questions but routinely resolved objections to those questions in unrecorded bench conferences held within the jury’s presence. On an isolated occasion, the district court also asked four juror questions without first conducting one of these unrecorded hearings. Although the district court entertained juror questions improperly in these respects, we conclude that asking the improperly vetted questions at trial was harmless since none of the questions elicited testimony that prejudicially impacted the jury’s verdict. Accordingly, we affirm the district court’s judgment of conviction.

FACTS

The rollover accident

In the early morning hours of June 6, 2006, appellant Michael Knipes and his friend and coworker Adam Wintch were involved in a single vehicle rollover accident on U.S. Highway 93 after drinking at a bar in Pioche. Wintch later died due to multiple blunt force injuries suffered in the accident.
The evening before the accident, both men attended a work function around 9 p.m. Afterwards, Knipes remembered meeting Wintch at the bar and having a couple of beers and a couple of shots. He next remembered waking up on the ground at the scene of the accident, then waking up at the hospital. When testifying in his own defense, however, Knipes could not remember when he left the bar or whether he was driving his vehicle when the accident occurred.
Following the accident, Knipes and Wintch were transported to the hospital, where Knipes was treated for back abrasions and Wintch was treated for more severe blunt force injuries. En route, Knipes appeared confused and smelled of alcohol but remained lucid enough to respond to a question by emergency medical technician Lorrie Klomp regarding whether he was driving the vehicle involved in the accident. Somewhat cryptically, Knipes answered, “I only wish I had been.”

Hospital interview

After receiving a dispatch call at 2:21 a.m., Nevada State Highway Patrol Trooper Guy Davis arrived at the hospital and interviewed Knipes. During the interview, Knipes admitted that he was *930 driving that morning. Moreover, as he conducted the interview, Trooper Davis detected an odor of alcohol, observed that Knipes’ eyes were bloodshot, and learned that Knipes used marijuana but had not smoked that day. Based on these indicia of intoxication, Trooper Davis obtained Knipes’ consent to perform a blood draw. Completed at 3:51 a.m., the blood draw revealed traces of marijuana metabolite and a 0.14 blood alcohol concentration (BAC).

Conclusions of the accident reconstructionist

In the meantime, Nevada State Highway Patrol accident reconstructionist Scott Simon was dispatched to the scene as lead investigator. Based on his investigation, Simon concluded that Knipes’ vehicle traveled onto the shoulder of the road at 86 to 96 mph and, after a series of overcorrections, struck an embankment, causing it to spin out and roll until coming to rest on its wheels. Simon attributed the cause of the accident to driver inattentiveness.
Discovering blood, tissue, and short, blondish hair on the surrounding weather stripping, Simon further determined that the passenger must have been ejected from the left rear window of the vehicle. Although Wintch had brown hair, and Knipes’ hair was blonde, Simon concluded that Knipes could not have been ejected from this window since Knipes’ back abrasions were minor relative to Wintch’s multiple blunt force injuries, which were ultimately fatal.

Background investigation

During a background investigation conducted roughly one week after the accident, Knipes gave Trooper Davis a signed voluntary statement in which he again admitted that he was driving at the time of the accident. Knipes further indicated that he was told that he and Wintch left the bar that morning around 2 a.m.

Procedural history

After Wintch succumbed to his injuries in the hospital, Knipes was charged with one count of causing Wintch’s death while driving under the influence of alcohol and marijuana and one count of involuntary manslaughter. During a two-day jury trial, the district court permitted jurors to ask witnesses multiple questions. The district court determined the admissibility of a majority of these questions in unrecorded bench conferences with the jury still seated. Four other questions, however, the district court admitted without allowing either party the opportunity to object outside of the jury’s earshot. Following trial, Knipes was convicted of driving under the influence causing death and was sentenced to serve a minimum prison term of 48 months. This appeal followed.

*931
DISCUSSION

On appeal, Knipes asserts that on-the-record hearings regarding the admissibility of juror questions should be mandated as part of the procedural safeguards prescribed in Flores v. State[2] and contends that the failure to comply with these safeguards is not amenable to harmless-error review. As discussed below, we agree with the former assertion, and accordingly adopt a requirement to that effect, but disagree that improperly administering juror questions is structural error requiring automatic reversal.

On-the-record hearings

At trial, the district court deliberately held bench conferences off the record to determine the admissibility of numerous juror questions. As a result, the record fails to reflect the nature of the parties’ objections or the grounds for the district court’s rulings. Because such a silent record significantly precludes appellate review, we require that hearings to determine the admissibility of juror questions be conducted on the record if there is an objection from a party.
We first approved juror questioning in Flores and concluded that the practice was “not prejudicial per se, but is a matter committed to the sound discretion of the trial court.’ ’[3] Recognizing that there was still some possibility for prejudice in its implementation, we mandated district courts to closely control the practice and adopted seven procedural safeguards to assist them in achieving that end.[4]
As part of its safeguards, Flores requires parties to have the opportunity to object to juror questions and have the admissibility of those questions determined outside the presence of the jury.[5] By doing so, Flores allows parties to voice objections to juror questions freely with the understanding that they are preserving the record for appeal without any risk of offending the jurors responsible for the questions. Since preservation cannot occur without a complete transcript, Flores on its face presumes that hearings regarding the admissibility of juror questions will be part of the transcribed record.
Moreover, the policy concerns that militate in favor of requiring these hearings to be recorded are the same that underlie the growing intolerance for off-the-record rulings generally. This court has required determinations to be conducted on the record in several *932 different contexts. In Armstrong v. State, for example, we required Petrocelli hearings to determine whether to admit, evidence of bad acts to be conducted on the record.[6] Likewise, in Rosky v. State, we advised lower courts to “clearly set forth the factual findings relied upon in resolving suppression motions.”[7] Notably, Armstrong and Rosky are only two examples of a larger trend.[8]
Even though this trend appears across different judicial contexts, it is based on the same two interrelated concerns — ensuring meaningful appellate review[9] and facilitating the efficient administration of justice.[10] These concerns apply with equal force in reviewing the exercise of discretion involved in managing the implementation of juror questioning in Nevada’s lower courts. Absent an adequate record, whether a district court sufficiently minimized the practice’s potential risks cannot be meaningfully reviewed. Moreover, since our review does not extend to issues outside of the record that the appellant supplies us,[11] permitting Flores hearings to go unrecorded when there is an objection to a juror question would unfairly place the form and substance of juror questions beyond the purview of an appeal.[12]
*933 For these reasons, we now extend Flores to require hearings regarding the admissibility of juror questions to be conducted on the record. In this case, the district court routinely determined the admissibility of juror questions in bench conferences that it deliberately held off the record for purposes of screening a seated jury from overhearing the objections of counsel. During these conferences, the court recorder was turned to “private mode,” resulting in “inaudible” gaps in the trial transcript. Moreover, no notes were taken with which to reconstruct these missing portions of the record. Accordingly, we conclude that the district court abused its discretion in adopting this format for resolving the admissibility of juror questions.

Failure to conduct a Flores hearing regarding four juror questions

On one specific occasion, the district court asked a set of juror questions without allowing either side the benefit of voicing its objections. At trial, Julie Hansen testified to drawing, packaging, and labeling samples of Knipes’ blood while on duty as a licensed practical nurse at the hospital where Knipes was admitted following the accident. After cross-examination, the district court deviated from its prior practice and asked four juror questions of Hansen without pausing to resolve the admissibility of these questions in an unrecorded bench conference.
While off-the-record bench conferences are problematic in their own right, failing entirely to conduct a hearing denied Knipes two specific procedural safeguards under Flores — a determination regarding the admissibility of the four juror questions and an opportunity to object to them outside the presence of the jury.[13] Thus, without reaching these questions’ individual merits, we conclude that the district court abused its discretion in failing to give the parties an opportunity to object at a bench conference.

Harmless error

Having concluded that the district court erred in employing the procedures discussed above, we next consider Knipes’ contention that mishandling Flores’ procedural safeguards is structural in nature and therefore not amenable to harmless-error review.[14] We disagree and take this opportunity to clarify the standard under which Flores violations are reviewed for harmlessness.
*934 Distinguishing between structural error and trial error in Neder v. United States, the United States Supreme Court explained that structural errors belong to that “limited class of fundamental constitutional errors” that “are so intrinsically harmful [to the concept of a fair trial] as to require automatic reversal . . . without regard to their effect on the outcome [of the proceeding].”[15] Notably, in Flores we joined “the majority of jurisdictions which acknowledge the practice of jury-questioning as an innovation that can significantly enhance the truth-seeking function of the trial process.”[16] We did so, moreover, in accord with the nearly unanimous view that juror questioning does not inherently run counter to a defendant’s constitutional rights to a fair trial and an impartial jury.[17] We therefore conclude that the mishandling of juror questions is not structural error since it is not the sort of error that would “necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.”[18]
Consequently, the failure to fully comply with Flores’ procedural safeguards is susceptible to review on a harmless-error analysis.[19] Implicitly, we recognized as much when we recently reaffirmed the practice of juror questioning in Allred v. State.[20] There, the district court administered every Flores safeguard, except it failed to admonish jurors as to the weight they accorded to responses to their questions. Having substantially complied with Flores in all but this respect, however, we concluded that ‘ ‘the [district court’s] failure to give the one admonition [was] harmless error.’ ’[21]
*935 Nonetheless, although harmless-error standards of review vary slightly based on the constitutional dimensions of the error,[22] we reached our conclusion in Allred without attention to this level of differentiation. As we recognized in Tavares v. State, constitutional trial error is reviewed under Chapman v. California;[23] nonconstitutional trial error, on the other hand, is analyzed under NRS 178.598, which provides that “[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.”[24] Since NRS 178.598 is identical to the federal harmless-error statute,[25] we follow the federal test announced in Kotteakos v. United States[26] and review nonconstitutional trial error for harmlessness based on whether it ‘ ‘ ‘had substantial and injurious effect or influence in determining the jury’s verdict.’ ”[27]
Since the stricter Chapman standard was applied elsewhere in the Allred opinion, we acknowledge that the opinion appears to suggest that Flores violations should be treated as constitutional trial error. To the extent that this misimpression exists, we now clarify that the failure to fully comply with Flores’ procedural safeguards should be considered, in the first instance, an evidentiary matter, and thus should be reviewed as nonconstitutional trial error.[28]
Similar to other evidentiary matters,[29] whether to allow and how to implement juror questioning is committed to the discretion of Nevada’s trial courts.[30] Permitting the practice, moreover, is a *936 means of enhancing jurors’ comprehension of the evidence by allowing jurors the opportunity to elicit evidence on their own.[31] To minimize any resulting prejudice in giving jurors this additional role, however, certain procedural safeguards must be administered.
Until now we have not specified what sort of harmless-error analysis applies when these mandatory safeguards are misapplied. Nevertheless, we have been specific regarding the proper standard of harmless-error review in cases involving the admission of bad acts evidence without the necessary limiting instructions. Although this evidence is ‘ ‘heavily disfavored in our criminal justice system,” it is admissible for purposes other than to prove the character of the defendant “so long as certain procedural requirements are satisfied.”[32] Adding to these requirements in Tavares, we mandated that two jury instructions be given regarding the limited purposes for which bad acts evidence may be considered.[33] Notably, we concluded that the failure to comply with this mandate is reviewed as nonconstitutional trial error, despite the undeniably high risk of prejudice that the uncontrolled admission of this evidence posed to defendants.[34]
In contrast, the risk of prejudice involved in juror questioning is neither universally accepted, nor has it been convincingly supported empirically.[35] Moreover, in the minority of states that have outlawed the practice, they have not done so because of any discrete constitutional concerns, but rather out of various prudential and separation of powers concerns.[36] Accordingly, we conclude that Flores violations generally will amount to nonconstitutional trial error under NRS 178.598 and will be subject to review for harmlessness under the Kotteakos test.
*937 Applying the Kotteakos test to the present case, we must determine “whether the error ‘had substantial and injurious effect or influence in determining the jury’s verdict.’ ’1[37] For the following reasons, we conclude under this test that the district court’s mishandling of the juror questions in this case was harmless.
Here, the district court routinely held muted bench conferences. However, it did so with the apparent intent of precluding jurors from taking offense to having their questions vetted in an adversarial manner. While failing to record these bench conferences was improper, we appreciate that this course of action was pursued in an attempt to satisfy a separate Flores safeguard — to allow objections to be heard outside the jury’s presence.[38] Thus, with the exception of its failure to review juror questions on the record, the district court substantially complied with Flores' procedural safeguards.[39]
Moreover, as a follow-up to nurse Hansen’s testimony, jurors submitted written questions regarding whether (1) she smelled alcohol on Knipes, (2) her initials were on the vials containing Knipes’ blood, (3) she saw Wintch in the hospital, and (4) she saw the color of Wintch’s hair. Hansen answered the first and last questions negatively, and the others in the affirmative. Thus, while the district court improperly asked each of these questions without first determining their admissibility pursuant to Flores, none of Hansen’s answers would have generated an inference of guilt.
Lastly, the primary issue at trial was whether Knipes was under the influence within two hours after driving.[40] This, the State sought to demonstrate circumstantially. Since Knipes stated during his background investigation that he was told that he and Wintch had left the bar at 2 a.m., and Trooper Davis received a dispatch call regarding the accident at 2:21 a.m., the evidence suggested a narrow 21-minute window of time in which the accident could have occurred. At 3:51 a.m., Knipes’ blood was drawn, revealing the presence of marijuana metabolite and a BAC almost twice the legal limit. Coupled with Knipes’ two separate admissions that he was driving that morning, a rational juror could have concluded *938 from this evidence that Knipes was operating his vehicle under the influence when the rollover accident occurred.[41] Because, considered together, this evidence is overwhelming, we conclude that the manner in which the district court entertained juror questions in this case did not prejudicially impact the jury’s verdict.

CONCLUSION

We conclude that hearings regarding the admissibility of juror questions if there has been an objection must be conducted on the record as part of the procedural safeguards prescribed in Flores v. State. We also conclude that the failure to properly administer these safeguards is subject to harmless-error review under the standard for nonconstitutional trial error. For the reasons stated above, the manner in which the district court entertained juror questions in this case was harmless. Accordingly, we affirm the district court’s judgment of conviction.
Hardesty and Douglas, JJ., concur.

114 Nev. 910, 913, 965 P.2d 901, 902-03 (1998).

 Id.

 Id. at 913, 965 P.2d at 902.

 Id. at 913, 965 P.2d at 902-03.

 Id.

 110 Nev. 1322, 1323-24, 885 P.2d 600, 601 (1994).

 121 Nev. 184, 191, 111 P.3d 690, 695 (2005).

 See, e.g., State v. Ruscetta, 123 Nev. 299, 163 P.3d 451 (2007); State v. Rincon, 122 Nev 1170, 147 P.3d 233 (2006). This trend is not exclusive to the criminal context. See Lioce v. Cohen, 124 Nev. 1, 19-20, 174 P.3d 970, 982 (2008) (requiring district courts to make specific findings on the record when ruling on new trial motions based on attorney misconduct).

 Armstrong, 110 Nev. at 1323-24, 885 P.2d at 601 (on-the-record Petrocelli hearings “provide this court with a meaningful opportunity to review the district court’s exercise of discretion”); Rosky, 121 Nev. at 191, 111 P.3d at 695 (written factual findings “facilitate proper appellate review”); Lioce, 124 Nev. at 20, 174 P.3d at 982 (specific on-the-record findings “enable[ ] our review of [the district court’s] exercise of discretion”).

 See Rosky, 121 Nev. at 191, 111 P.3d at 695 (specific on-the-record findings foster “th[e] synergy between the trial and reviewing courts [so] that appellate courts can develop a uniform body of precedent” (internal quotation marks omitted)); Qualls v. State, 114 Nev. 900, 903, 961 P.2d 765, 767 (1998) (“[T]he efficient administration of justice depends on the[ ] conscientious adherence to the dictates of our previous decisions requiring on-the-record [Petrocelli] hearings.”).

 Jacobs v. State, 91 Nev. 155, 158, 532 P.2d 1034, 1036 (1975) (“It is the appellant’s responsibility to provide the materials necessary for this court’s review.”); Anderson v. State, 81 Nev. 477, 482, 406 P.2d 532, 534 (1965) (stating that matters outside the record will not be considered).

 See Lopez v. State, 105 Nev. 68, 85, 769 P.2d 1276, 1287 (1989) (“Failure to provide an adequate record on appeal handicaps appellate review and triggers possible due process clause violations.”).

Flores v. State, 114 Nev. 910, 913, 965 P.2d 901, 902-03 (1998).

In this respect, Knipes urges us to follow State v. Costello, 646 N.W.2d 204, 214-15 (Minn. 2002), in which the Minnesota Supreme Court banned juror questioning on the view that the practice’s inherent risks were unman *934 ageable and concluded, as a corollary matter, that allowing the practice could never be harmless. Notably, this skepticism regarding harmless-error review depends on a view of juror questioning that is diametrically opposed to our own rationale in Flores for approving the practice — i.e., that any risk of prejudice could be managed through judicial oversight. Thus, Knipes’ reliance on Costello is unpersuasive.

 527 U.S. 1, 7 (1999).

 114 Nev. at 912-13, 965 P.2d at 902.

 Id. at 913, 965 P.2d at 902; see, e.g., Medina v. People, 114 P.3d 845, 855, 858 (Colo. 2005) (determining that juror questioning is not per se unconstitutional and declining to treat a mishandling of the procedure as structural error); State v. Doleszny, 844 A.2d 773, 778-79 (Vt. 2004) (citing cases representing the vast majority of states and federal circuits allowing juror questioning).

 Neder, 527 U.S. at 9; see Medina, 114 P.3d at 857 (noting that “neither the United States Supreme Court nor the majority of state courts have held that allowing a juror to ask a question impacts the framework in which a criminal trial proceeds”).

 Neder, 527 U.S. at 9 (recognizing that errors not defined as structural are subject to harmless-error review).

 120 Nev. 410, 416-18, 92 P.3d 1246, 1251-52 (2004).

 Id. at 418, 92 P.3d at 1252.

 See Tavares v. State, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) (recognizing the differences in harmless-error review for constitutional and non-constitutional trial error).

 386 U.S. 18, 24 (1967). The test under Chapman for constitutional trial error is “whether it is ‘clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.’ ” Tavares, 117 Nev. at 732 n.14, 30 P.3d at 1132 n.14 (quoting Neder, 527 U.S. at 18).

 Tavares, 117 Nev. at 732, 30 P.3d at 1132.

 See Fed. R. Crim. P. 52(a) (“Any error, defect, irregularity or variance that does not affect substantial rights must be disregarded.”).

 328 U.S. 750, 776 (1946).

 Tavares, 117 Nev. at 732, 30 P.3d at 1132 (quoting Kotteakos, 328 U.S. at 776).

 See U.S. v. Freeman, 498 F.3d 893 , 901 (9th Cir. 2007) (reviewing non-constitutional evidentiary rulings for harmless error).

 See Flores v. State, 114 Nev. 910, 912-13 , 965 P.2d 901, 902 (1998) (jurors are only permitted to pose questions that are permissible under the rules of evidence); Medina v. People, 114 P.3d 845, 858 (Colo. 2005) (juror questions are subject to the same rules of evidence governing questioning by attorneys).

 Flores, 114 Nev. at 913, 965 P.2d at 902.

 Id. at 912-13, 965 P.2d at 902 (recognizing the interrelationship between increased juror comprehension and the enhancement of the truth-seeking function of the trial process).

 Tavares, 117 Nev. at 730, 30 P.3d at 1132; see Mclellan v. State, 124 Nev. 263, 270, 182 P.3d 106, 111 (2008) (modifying a district court’s duty under Tavares by allowing defendants to waive the giving of a limiting instruction prior to the admission of bad acts evidence).

 117 Nev. at 730, 30 P.3d at 1131.

 Id. at 733, 30 P.3d at 1133.

 See Medina v. People, 114 P.3d 845, 854 (Colo. 2005).

 Id.; see State v. Costello, 646 N.W.2d 204, 214-15 (Minn. 2002) (using supervisory powers to prohibit juror questioning); Morrison v. State, 845 S.W.2d 882, 888 (Tex. Crim. App. 1992) (cautioning against experimenting with juror questioning “[a]bsent a thorough legislative mandate in this area”).

Tavares, 117 Nev. at 732, 30 P.3d at 1133 (quoting Kotteakos, 328 U.S. at 776).

See Flores v. State, 114 Nev. 910, 913, 965 P.2d 901, 902-03 (1998).

Cf. Allred v. State, 120 Nev. 410, 416, 92 P.3d 1246, 1251 (2004).

NRS 484.379(l)(c). Under the two-hour rule, a person who “[i]s found by measurement within 2 hours after driving or being in actual physical control of a vehicle to have a concentration of alcohol of 0.08 or more in his blood or breath” is guilty of driving under the influence.

For this reason, we conclude that Knipes’ assertion that sufficient evidence does not support the jury’s verdict is without merit. See Hernandez v. State, 118 Nev. 513, 531, 50 P.3d 1100, 1112 (2002) (“[C]ircumstantial evidence alone may support a conviction.”). Similarly, having carefully reviewed Knipes’ remaining contentions on appeal, we conclude that none warrant reversal.