IN THE SUPREME COURT OF THE STATE OF NEVADA

WILLIAM CAMRON BOGAN,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 77605

**FILED**

OCT 15 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of robbery with the use of a deadly weapon and one count each of conspiracy to commit burglary, conspiracy to commit robbery, burglary while in possession of a firearm, and first-degree murder with the use of a deadly weapon.[1] Eighth Judicial District Court, Clark County; Valerie Adair, Judge. Appellant raises nine issues.

First, appellant claims the district court erred in denying the motion to suppress his statement to police. He alleges that his statement was not voluntarily given because he was coerced by undue pressure and improper interview tactics, including empty promises, leading questions, and suggestive facts. "To determine the voluntariness of a confession, the court must consider the effect of the totality of the circumstances on the will of the defendant." *Passama v.* State, 103 Nev. 212, 214, 735 P.3d 321, 323 (1987); *see also Rosky v. State*, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005) (providing for de novo review of the voluntariness of a defendant's confession). And here, we conclude the tactics used by the police were not

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

20-37936

impermissibly coercive. The detective said he would talk to the prosecutor and let him know of appellant's cooperation but also said no promises could be made about punishment, *see Passama*, 103 Nev. at 215, 735 P.3d at 323 (finding it permissible to tell the person interrogated that his cooperation would be communicated to the prosecutor), and the detective asked appellant for his side of the story after outlining the theory of appellant's involvement, *cf. Silva v. State*, 113 Nev. 1365, 1369, 951 P.2d 591, 594 (1997) (recognizing "a lie that relates to a suspect's connection to the crime is the least likely to render a confession involuntary" (internal quotation marks omitted) (emphasis omitted)). The nature of the questioning was not excessively repetitive or prolonged as he was questioned for approximately two and one-half hours and there is no indication he was deprived of food or sleep. He was advised of his constitutional rights before questioning began. And while appellant argues he was only 18 and the police knew he went to a "special school,"[2] nothing in the record suggests that appellant was of low intelligence. Considering the totality of the circumstances and the factors outlined in *Passama*, 103 Nev. at 214, 735 P.2d at 323, we conclude that the State showed by a preponderance of the evidence that appellant's statement was voluntary.

To the extent appellant argues that he did not knowingly and intelligently waive his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), we disagree. "We review the facts and circumstances of each particular case weighing the totality of circumstances to determine whether the *Miranda* warnings were properly given and whether the defendant waived his *Miranda* rights." *Koger v. State*, 117 Nev. 138, 141, 17 P.3d 428,

---

[2]Appellant acknowledged he went to an adult education program because he was behind on credits for graduation.

430 (2001). The police advised appellant of his constitutional rights before he was interrogated, went through the rights, and ensured appellant was able to comprehend what was being said. Appellant indicated he understood his rights and never expressed a desire not to speak to police. *See Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 182 (2006) ("[A] waiver may be inferred from the actions and words of the person interrogated."). Based on the record before this court, we conclude appellant knowingly and intelligently waived his *Miranda* rights. Therefore, the district court did not err when it denied appellant's motion to suppress.

Second, appellant claims that his constitutional right to a jury chosen from a fair cross section of the community was violated based on the number of African Americans present in the venire. However, appellant accepted factual representations made by the jury commissioner in another case—representations that do not appear in the record—and made no argument as to how the underrepresentation of African Americans was inherent in the jury selection process or how the process systematically excluded African Americans. *See Valentine v. State*, 135 Nev. 463, 465, 454 P.3d 709, 713-14 (2019) (outlining the three prongs a defendant must show to establish a prima facie violation of the fair-cross-section requirement, including a showing "that th[e] underrepresentation is due to systematic exclusion of the [distinctive] group in the jury-selection process" (internal quotation marks omitted) (emphasis omitted)). Without any argument to satisfy the third prong, appellant failed to establish a prima facie violation and thus is not entitled to relief. *See Grey v. State*, 124 Nev. 110, 117, 178

P.3d 154, 159 (2008) (providing for de novo review of constitutional challenges).[3]

Third, appellant claims his right to a fair and impartial jury was violated when the district court denied his challenge for cause to prospective juror 26. However, prospective juror 26 was ultimately excused from the venire. Because appellant has not established that any of the empaneled jurors were not fair and impartial, his claim warrants no relief. *Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567, 578 (2005).

Fourth, appellant claims the district court abused its discretion in precluding defense counsel from using a white board during jury selection to write down partial responses to a certain topic. The district court prohibited the use of the white board but stressed that counsel was not prohibited from asking questions on the topic. We discern no abuse of discretion in the district court's ruling. *Lamb v. State*, 127 Nev. 26, 37, 261 P.3d 700, 707 (2011) ("Decisions concerning the scope of voir dire and the manner in which it is conduct are reviewable only for abuse of discretion, and draw considerable deference on appeal." (internal citation and quotation marks omitted)).

---

[3]Appellant also asserts error in the exercise of peremptory challenges, in violation of *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Appellant did not object below, and the record is insufficient for this court's review on appeal in the first instance. We therefore decline to address appellant's *Batson* argument. *See McCullough v. State*, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983) ("The general rule is that failure to object to asserted errors at trial will bar review of an issue on appeal."); *Wilkins v. State*, 96 Nev. 367, 372, 609 P.2d 309, 312 (1980) (observing that while this court may consider constitutional issues raised for the first time on appeal, "it will not do so unless the record is developed sufficiently both to demonstrate that fundamental rights are, in fact, implicated and to provide an adequate basis for review").

Fifth, appellant claims that the district court erroneously allowed a detective to provide expert testimony regarding the victim's wounds, ballistics, and pharmacology without being noticed or qualified as an expert in these areas. We have held that "[t]he key to determining whether testimony . . . constitutes lay or expert testimony lies with a careful consideration of the substance of the testimony—does the testimony concern information within the common knowledge of or capable of perception by the average layperson or does it require some specialized knowledge or skill beyond the realm of everyday experience?" *Burnside v. State*, 131 Nev. 371, 382-83, 352 P.3d 627, 636 (2015).

Appellant first asserts that the detective provided expert testimony about the victim's wounds. The detective testified that, after observing the scene, the trajectory of the bullet hole through the car's window, the victim's placement in the car, and the autopsy, it appeared the victim had been shot by a single bullet while his left arm was more than likely on the steering wheel. This testimony was rationally based on the detective's perception and was proper lay witness testimony. *See* NRS 50.265 (stating that lay witness testimony "is limited to those opinions or inferences which are . . . [r]ationally based on the perception of the witness[ ] and . . . [h]elpful to a clear understanding of the testimony of the witness or the determination of a fact in issue"); *cf. Lord v. State*, 107 Nev. 28, 806 P.2d 548 (1991) (holding it was error for law enforcement to testify regarding the victim's injuries in a case where the cause of injury was not apparent). Furthermore, even assuming the detective proffered expert testimony, the medical examiner testified that the victim had wounds from different parts of a bullet—the jacket and the core—and that she essentially recovered one bullet. The medical examiner further testified regarding the

entrance and trajectory of the victim's bullet wounds. Therefore, appellant has not shown plain error affecting his substantial rights.[4]

Appellant next asserts that the detective provided two expert opinions about ballistics—that the jacket and core of a bullet will separate when shot through a window and that a match in the ballistics information network, referred to as a NIBIN hit, would not occur unless cartridges were fired from the same gun. We agree with appellant that the detective's testimony required some specialized knowledge beyond the realm of everyday experience and was thus expert testimony. However, with regard to the NIBIN hit—testimony to which appellant objected—appellant has not explained what he would have done differently had the detective been noticed as an expert as he presented his own expert who contradicted the detective's conclusion that the cartridges were fired from the same gun based solely on the preliminary match produced by the NIBIN hit. *See Burnside*, 131 Nev. at 384, 352 P.3d at 637 (concluding that exclusion of testimony based on the State's failure to properly notice it as expert testimony would not have been the appropriate remedy where, among other things, there was no explanation of what the defense "would have done differently had proper notice been given"). Furthermore, we are not convinced this aspect of the detective's testimony substantially affected the jury's verdict considering testimony detailing appellant's part in the robbery and appellant's statement to police, in which he admitted that he

---

[4]From the record it does not appear appellant objected to this testimony based on the grounds raised on appeal. Therefore, we review for plain error. *See Perez v. State*, 129 Nev. 850, 861, 313 P.3d 862, 869 (2013) (applying plain error where the party fails to object at trial); *Ford v. Warden*, 111 Nev. 872, 884, 901 P.2d 123, 130 (1995) (holding that the theory underlying an assignment of error cannot be changed on appeal).

fired three shots. With regard to testimony about a bullet separating when shot through a window—testimony to which appellant did not object—appellant has not shown plain error affecting his substantial rights.

Appellant further asserts that the detective provided expert testimony about the composition of the substance "Lean." We are not convinced this was expert testimony, as the detective identified the controlled substance that was at the center of the robbery and explained that "Lean" was a street name for the controlled substance. But even assuming this was expert testimony, appellant has not shown plain error affecting his substantial rights given the other evidence and the fact that he was not charged with any crimes related to controlled substances.

Sixth, appellant claims the State committed prosecutorial misconduct. "When considering claims of prosecutorial misconduct, this court engages in a two-step analysis. First, we must determine whether the prosecutor's conduct was improper. Second, if the conduct was improper, we must determine whether the improper conduct warrants reversal." *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008) (internal footnotes omitted).

Appellant argues the first instance of prosecutorial misconduct occurred when the State impermissibly shifted the burden of proof during cross-examination of the defense's expert witness by suggesting the expert failed to conduct testing of the ballistic evidence. On direct examination, the expert witness opined that there was more than one shooter. On cross-examination, the State clarified with the expert witness that he could not confirm his opinion without conducting certain testing of the evidence and asked why such testing was not conducted to support his opinion. We conclude the prosecutor's questioning was not improper because the

prosecutor may examine the basis of an expert witness's opinion. *Blake*, 121 Nev. at 790, 121 P.3d at 574 ("It is a fundamental principle in our jurisprudence to allow an opposing party to explore and challenge through cross-examination the basis of an expert witness's opinion."); *see also Singleton v. State*, 90 Nev. 216, 219, 522 P.2d 1221, 1222-23 (1974) (holding that the credibility of a source used by an expert witness in arriving at an opinion is an underlying fact properly pursued in cross-examination).

Appellant argues the second instance of prosecutorial misconduct occurred when the State improperly disparaged the defense expert in rebuttal argument. During closing argument, defense counsel reminded the jury of the expert witness's testimony, during which the expert said he could not ethically make the conclusion the detective had made regarding ballistic evidence. Taken in context, the prosecutor's comments during rebuttal argument did not disparage the defense but were made in response to the expert's testimony and defense counsel's argument. We conclude the prosecutor's argument was not improper.

Seventh, appellant claims that numerous unrecorded bench conferences occurred, denying him meaningful appellate review and his right to be present during discussions about jury questions. Save for the bench conferences regarding jury questions, appellant does not specify the subject matter of the other unrecorded bench conferences or explain their significance. *See Daniel v. State*, 119 Nev. 498, 508, 78 P.3d 890, 897 (2003) ("[A]n appellant must demonstrate that the subject matter of the missing portions of the record was so significant that the appellate court cannot meaningfully review an appellant's contentions of error and the prejudicial effect of any error."). Thus, no relief is warranted on this bare claim. As to the bench conferences regarding jury questions, we agree that the district

SUPREME COURT
OF
NEVADA

(O) 1947A

court abused its discretion by holding unrecorded bench conferences to determine the admissibility of jury questions. *See Knipes v. State*, 124 Nev. 927, 933, 192 P.3d 1178, 1182 (2008) (establishing that "hearings regarding the admissibility of juror questions [must] be conducted on the record"). However, we disagree with appellant that such error is structural, *see id.* at 934, 192 P.3d at 1183, and we decline his request to overturn precedent to the contrary, *see Armenta-Carpio v. State*, 129 Nev. 531, 535, 306 P.3d 395,398 (2013) (recognizing this court "will not overturn precedent absent compelling reasons for so doing"). Rather, we conclude that the error was harmless. Appellant does not argue that a jury question was erroneously admitted based on the unrecorded bench conferences, and the evidence of appellant's guilt was overwhelming, including his admissions to police, testimony by another participant, and a document with appellant's name discovered in the car used during the crimes. Therefore, the error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Knipes*, 124 Nev. at 935, 192 P.3d at 1183 (internal quotation marks omitted).

With regard to appellant's claim that he was denied the right to be present during critical stages of the proceeding when the admissibility of the jury questions was discussed without him, "a defendant does not have an unlimited right to be present at every proceeding." *Gallegos v. State*, 117 Nev. 348, 367, 23 P.3d 227, 240 (2001), *abrogated on other grounds by Nunnery v. State*, 127 Nev. 749, 263 P.3d 235 (2011). Moreover, "[t]he right to be present is subject to harmless error analysis," and "[t]he defendant must show that he was prejudiced by the absence." *Kirksey v. State*, 112 Nev. 980, 1000, 923 P.2d 1102, 1115 (1996) (internal citation omitted). Appellant has not shown how his absence from the unrecorded bench

conferences about jury questions prejudiced him in any way, and thus he is not entitled to relief on this claim.

Eighth, appellant claims that defense counsel improperly conceded his guilt during closing argument without his consent.[5] To the extent counsel's statements can be viewed as a concession of guilt, appellant does not demonstrate it was over his objection, *see McCoy v. Louisiana*, 138 S. Ct. 1500, 1505, 1509 (2018); *cf. Florida v. Nixon*, 543 U.S. 175, 189, 192 (2004) (holding there is no "blanket rule demanding the [capital] defendant's explicit consent" to counsel's concession strategy where defendant is informed and is unresponsive to the strategy), or "undermined [any] testimonial disavowal of guilt" by appellant, *see Jones v. State*, 110 Nev. 730, 739, 877 P.2d 1052, 1057 (1994) (reversing conviction based on concession of guilt that "completely eroded any doubt that might have been raised in the juror's mind by [the defendant's] protestations of innocence" and that "made all of [the defendant's] testimony incredible"). Accordingly, no relief is warranted on this claim.

Lastly, appellant claims cumulative error warrants relief. "The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Valdez*, 124 Nev. at 1195, 196 P.3d at 481 (internal quotation marks omitted). This court considers three factors when considering a claim of cumulative error: "(1)

---

[5]Appellant also argues counsel's ineffectiveness on this same ground, but "[t]his court has repeatedly declined to consider ineffective-assistance-of-counsel claims on direct appeal unless the district court has held an evidentiary hearing on the matter or an evidentiary hearing would be needless." *Archanian v. State*, 122 Nev. 1019, 1036, 145 P.3d 1008, 1020-21 (2006). Because neither exception applies here, we decline to address this claim.

whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Id.* (internal quotation marks omitted). While the charged crimes in appellant's case are serious in nature, the State presented compelling evidence of appellant's guilt and we conclude that the cumulative effect of the two identified errors—admission of expert testimony and unrecorded bench conferences surrounding jury questions—did not deprive appellant of his right to a fair trial. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Gibbons

_____, J.
Stiglich

_____, J.
Silver

cc:   Hon. Valerie Adair, District Judge
      Karen A. Connolly, Ltd.
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk