# IN THE SUPREME COURT OF THE STATE OF NEVADA

CARLOS ERIBERTO ORELLANA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 80053

FILED

MAY 27 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY. S. Young
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of second-degree murder with the use of a deadly weapon and attempted murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Valerie Adair, Judge.

The State charged appellant Carlos Orellana by information with murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, and battery with the use of a deadly weapon. Orellana filed motions in limine to prevent the State from arguing that a defense of others instruction was not available to him and to preclude the State from introducing a cell phone video showing the scenes and events that occurred shortly after the victim's shooting, arguing the video was irrelevant and more prejudicial than probative. The court deferred ruling on the motions until trial.

At trial, the court admitted the cell phone video, and the parties settled the jury instructions regarding defense of others. Additionally, after the jury foreperson and Juror One raised concerns about Juror Seven not deliberating and not following the jury instructions, the court conducted a voir dire, questioning all three jurors. The parties also asked certain questions during which it was confirmed that Juror Seven was participating in the deliberations and relying on the jury instructions. The district court

21-15274

concluded that Juror Seven did not engage in misconduct and sent the jurors back to continue deliberation.

After completing deliberations, the jury found Orellana guilty on all counts. At sentencing, the State dismissed the battery with use of a deadly weapon charge, and Orellana was sentenced on the remaining charges to an aggregate term of life with the possibility of parole after 18 years. Orellana filed a motion for a new trial based on newly discovered evidence, relying on a declaration from Juror Seven that alleged racial animus and bias among the jurors. The State argued that the declaration was not new evidence under NRS 176.515 and, regardless, did not demonstrate that there was racial animus against Orellana. The court denied the motion after a hearing. Orellana appeals.

On appeal, Orellana argues that (1) the district court's holdout juror voir dire resulted in a coercive deliberative process; (2) the district court abused its discretion by denying his new trial motion and failing to hold an evidentiary hearing; (3) he was prejudiced by the district court's failure to record bench conferences; (4) the district court abused its discretion by admitting as evidence the cell phone video; (5) the district court gave incorrect jury instructions that conflated two different defense theories and failed to account for statutory amendments; (6) cumulative errors rendered his trial fundamentally unfair; and (7) there was insufficient evidence to convict him of attempted murder. We address his arguments in turn.

*The district court's voir dire did not violate Orellana's right to a fair and impartial jury*

Orellana argues that the district court's improper voir dire of a holdout juror and two other jurors violated his right to a fair and impartial

jury. Because Orellana did not object to the district court's voir dire, we review his claim for plain error. *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). District courts may poll jurors so long as the method used is not coercive. *Saletta v. State*, 127 Nev. 416, 420, 254 P.3d 111, 114 (2011). While Orellana did object to a specific question as improperly invading the jury's deliberative process, the district court sustained the objection, and Orellana does not meaningfully explain how that sole question had a coercive effect on the jury's continued deliberations. *Id.* at 421, 254 P.3d at 115 (recognizing that "failure to object to the district court's decision to continue polling the jury suggests the absence of a coercive atmosphere"). While Orellana points out that the record does not show that the district court admonished the jurors again before they returned to deliberations, the three jurors questioned confirmed that they were following the jury instructions. Further, Orellana expressly objected to the district court providing an *Allen* instruction, which would include an admonition that jurors should not "surrender [their] honest conviction[s] as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict." *Wilkins v. State*, 96 Nev. 367, 373 n.2, 609 P.2d 309, 313 n.2 (1980). Finally, the amount of time the jury deliberated for initially was roughly equivalent to its post-voir dire deliberation, which supports that the district court's questioning was not coercive. *Saletta*, 127 Nev. at 420-21, 254 P.3d at 114-15 (recognizing a third factor in assessing whether a polling method is coercive is "the amount of time that it took the jury to reach a verdict after deliberation resumed," and concluding that a 36-minute post-polling deliberation, which exceeded the initial deliberation, was not indicative of a coercive process).

While Orellana argues that the district court's voir dire must have been coercive because the court commented to counsel that Juror Seven seemed to have made up her mind not to convict Orellana yet voted to convict Orellana the next day, we disagree. Juror Seven ultimately voted to convict Orellana after several further hours of deliberation, and she did not retreat from this verdict in her post-verdict declaration or when the district court polled the jury after the verdict's publication. Accordingly, under the totality of these circumstances, we conclude that Orellana has not shown that the district court plainly erred in questioning the jurors before the verdict.

*The district court did not abuse its discretion in denying Orellana's motion for a new trial*

We review a decision to grant or deny a motion for a new trial for abuse of discretion. *Hennie v. State*, 114 Nev. 1285, 1289, 968 P.2d 761, 764 (1998). Orellana argues that the district court abused its discretion by denying his motion for a new trial based on newly discovered evidence— Juror Seven's declaration alleging other jurors bullied her and accused her of racism. We disagree.

A juror cannot attempt, by affidavit or testimony, to contradict the jury's verdict by discussing anything that had an effect upon the juror's mind or emotions as influencing the juror's assent or dissent from the verdict or concerning a juror's mental processes related to obtaining the verdict. NRS 50.065(2); *see also Meyer v. State*, 119 Nev. 554, 562, 80 P.3d 447, 454 (2003) (explaining that intrinsic influences on the jury, such as "intimidation or harassment of one juror by another, or other similar situations" cannot be used to impeach a verdict). However, a narrow exception to the no-impeachment rule applies where "a juror makes a clear

statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." *Pena-Rodriguez v. Colorado*, 580 U.S. \_\_\_, \_\_\_, 137 S. Ct. 855, 869 (2017).

Here, the district court did not abuse its discretion when it concluded that Juror Seven's affidavit failed to satisfy the *Pena-Rodriguez* threshold. *Id.* (holding that whether a statement falls outside the no-impeachment rule is within the district court's sound discretion). Juror Seven's declaration did not allege that one or more jurors voted to convict Orellana because of his race. To the contrary, the declaration stated that another juror accused Juror Seven of not wanting to convict Orellana because the victim was black and alleged *Juror Seven* was racist against black people. Juror Seven's declaration did not state that the verdict was influenced by racial animus directed at Orellana nor did it disclaim the guilty verdict. Thus, the district court appropriately denied Orellana's motion for a new trial. *Cf. Id.* at 870-71 (holding that the trial court erred in denying the Hispanic defendant's motion for a new trial where the juror's affidavits confirmed that another juror made anti-Hispanic comments against the defendant and actively campaigned to have other jurors adopt his views).

*The district court's failure to record bench conferences did not cause prejudice or a miscarriage of justice*

Orellana argues that the district court committed reversible error when it failed to record bench conferences.[1] Because Orellana did not

---

[1]While Orellana argues broadly that the failure to record every bench conference violated his right to meaningful appellate review, his brief focuses on the failure to record bench conferences related to questions from the jury. Thus, our analysis focuses only on whether the failure to record the bench conferences related to juror questions constitutes reversible error.

object below, we review his claim for plain error, under which reversal is not warranted unless the error affected his substantial rights by causing actual prejudice or a miscarriage of justice. *Valdez*, 124 Nev. at 1190, 196 P.3d at 477. While the error is apparent here, *see Knipes v. State*, 124 Nev. 927, 933, 192 P.3d 1178, 1182 (2008) (establishing that "hearings regarding the admissibility of juror questions [must] be conducted on the record"), Orellana does not argue that any of the juror questions the district court reviewed and allowed to be asked of witnesses were improper or that any questions the court deemed not admitted prejudiced him. Accordingly, as Orellana fails to show actual prejudice, we conclude that the district court's failure to record the bench conferences does not warrant reversal.[2] *Valdez*, 124 Nev. at 1190, 196 P.3d at 477.

*The State presented sufficient evidence to support the jury's verdict*

Orellana argues that the State presented insufficient evidence to support the conviction for attempted murder because witness Ernesto Martinez's testimony was either not entirely corroborated by other witnesses or was contradicted by other testimony or physical evidence. He further argues that, even assuming Martinez's testimony was entirely accurate, it is insufficient to establish an intent to kill. We disagree. First,

---

[2]Orellana relies on *Knipes* to argue that the juror questions improperly allowed for an inference of guilt, but the primary concern in *Knipes* was that the district court asked the witness juror questions before determining if the questions were admissible. 124 Nev. at 933, 192 P.3d at 1182. Here, the record shows that the district court determined the admissibility of questions before asking them, and Orellana does not argue that any of the questions asked were improper. *See Flores v. State*, 114 Nev. 910, 912-13, 965 P.2d 901, 902 (1998) (recognizing that the practice of juror questioning of witnesses is "not prejudicial per se, but is a matter committed to the sound discretion of the trial court").

it is the jury's duty to weigh contradicting evidence and reach a verdict, *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) ("[I]t is the jury's function, not that of the [reviewing] court to assess the weight of the evidence and determine the credibility of witnesses."), and thus we will affirm the jury's verdict so long as there is substantial evidence supporting the verdict, *Brass v. State*, 128 Nev. 748, 754, 291 P.3d 145, 150 (2012) ("The jury's verdict will not be disturbed on appeal when there is substantial evidence supporting it."). Martinez testified that he saw Orellana shoot the murder victim, that Orellana then looked at Martinez and asked, "What's up?" and then shot Martinez, hitting him in the left arm. While the wound was not fatal, a rational juror could infer that Orellana intended to kill Martinez when he looked directly at him and shot him. *Cf. Washington v. State*, 132 Nev. 655, 663, 376 P.3d 802, 808 (2016) (holding that a rational juror could infer that a defendant acted with intent to kill when he fired multiple bullets into an occupied structure). Accordingly, we conclude that sufficient evidence exists for a rational juror to find that Orellana committed attempted murder. *McNair*, 108 Nev. at 56, 825 P.2d at 573 (holding that we will affirm the conviction if "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

*The district court's error in admitting the cell phone video was harmless*

We review a district court's decision regarding the admissibility of evidence for an abuse of discretion. *Harris v. State*, 134 Nev. 877, 879, 432 P.3d 207, 210 (2018) (reviewing the trial court's decision to admit photographic evidence for an abuse of discretion). Orellana argues that the district court erred by admitting the cell phone video that showed Orellana's

friend Michael Opiola kicking the murder victim after Orellana had left because the video is irrelevant and the probative value is substantially outweighed by its prejudicial effect. While we agree that the district court erroneously admitted the video because it was irrelevant to the charges against Orellana, we conclude the error was harmless because the issue of guilt was not close in light of other evidence. *Bellon v. State*, 121 Nev. 436, 445, 117 P.3d 176, 181 (2005) ("[T]o determine whether the erroneous admission of evidence constitutes harmless error," we consider "whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged." (internal quotation marks omitted)).

While Orellana was charged with serious crimes, the record shows the question of guilt was not close. Orellana argues the killing was justified because he defended Opiola, but overwhelming evidence, including testimony from several witnesses, shows that Orellana shot the victim once as the victim was kicking Opiola, chased the victim's friends away from the scene, returned to the scene of the fight, and then shot the incapacitated victim once more in the back, exceeding any force necessary to defend Opiola. Further, as discussed *supra*, substantial evidence shows that Orellana, after shooting the victim, looked up at Martinez and intentionally shot him. Accordingly, because the issue of guilt was not close, we conclude that the error in admitting the video did not deny Orellana his right to a fair trial.

*The district court did not abuse its discretion in admitting a photo of the victim*

Orellana argues that the district court abused its discretion by admitting a graphic photo of the victim because it was irrelevant, the probative value was substantially outweighed by the danger of unfair

prejudice, and the district court failed to adequately explain why the photograph was admissible or engage in a prejudice versus probative analysis. We disagree.

The State proffered the evidence at issue here—a single photograph of the victim lying in a pool of blood with several placards noting the location of cartridge casings near the body—as evidence of Orellana's state of mind when he approached the victim. As the cartridge casings could show that Orellana methodically discharged his gun as he approached the victim, the photo showing their placement around the victim is relevant. *See* NRS 48.015 (providing that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence"). Although the photo showed the victim lying in a pool of blood, it was not otherwise unduly graphic or shocking and the placards directed the jury's focus to the casings. Thus, we conclude that the district court acted within its discretion by admitting the photo, as it was relevant to the State's case and its probative value was not substantially outweighed by the danger of unfair prejudice.[3] *Harris* 134 Nev. at 882, 432 P.3d at 212.

---

[3]Because the danger of unfair prejudice did not substantially outweigh the probative value of the photograph, the district court's failure to conduct an explicit prejudice versus probative analysis does not warrant reversal. *See Harris*, 134 Nev. at 880-82, 432 P.3d at 211-12 (holding that, while the district court failed to perform its gatekeeping function, it abused its discretion by admitting the photos only because "the photographs' probative value was substantially outweighed by the danger of unfair prejudice").

*The jury instructions were correct statements of the law and were not unduly confusing*

Orellana argues that the district court erred when settling jury instructions by refusing to properly distinguish between self-defense and defense of others. He further argues that the jury instruction erroneously removed the State's burden to disprove both theories. He next argues that the district court included an incorrect knowledge requirement in its original-aggressor instruction. Finally, he argues the jury instructions contained conflicting knowledge requirements. On de novo review, *Gonzalez v. State*, 131 Nev. 991, 997, 366 P.3d 680, 684 (2015), we conclude that the district court properly instructed the jury on the defense theories.

Under the applicable statutes and caselaw, the self-defense and defense-of-others instructions were correct statements of Nevada law outlining the scope of the two defenses. *See* NRS 200.160; NRS 200.120(1); *Runion v. State*, 116 Nev. 1041, 1046, 13 P.3d 52, 56 (2000)[4]; *Batson v. State*, 113 Nev. 669, 674 n.2, 941 P.2d 478, 481 n.2 (1997). Further, we conclude that unlike the instruction given in *Gonzalez*, the instructions here were not unduly confusing. 131 Nev. at 999, 366 P.3d at 685-86 (concluding that the district court erred by giving one "unwieldy and unnecessarily confusing . . . amalgamation" that combined both self-defense and defense of others). In this case, the court correctly conveyed the law on both defense

---

[4]Although Orellana argues that *Runion* is inapposite because the Legislature amended the statutory scheme after that decision, he fails to identify what changes occurred that made the *Runion* statutory analysis inapposite. Accordingly, we do not consider that argument. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (noting that this court need not consider claims not cogently argued or supported by authority).

theories and the instructions were not a singular "amalgamation." Moreover, the instructions properly informed the jury that if evidence of either defense is present, the State must overcome that evidence beyond a reasonable doubt, such that they did not remove the State's burden to disprove both the self-defense and defense-of-others theories.

Regarding the original-aggressor instruction, we conclude that the challenged instruction did not include an erroneous knowledge requirement, as it explicitly stated the correct requirement.[5] Further, the other instructions are not contradictory because, while they had different standards for knowledge, the instructions address different actions to which the Legislature ascribed different knowledge requirements. Accordingly, we conclude that the district court did not err in instructing the jury regarding original-aggressor requirements.

*Orellana is not entitled to relief under cumulative error analysis*

Cumulative error applies where the cumulative effect of individually harmless errors violate the defendant's right to a fair trial. *See Valdez*, 124 Nev. at 1195, 196 P.3d at 481. "When evaluating a claim of cumulative error, we consider the following factors: (1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Id.* (internal quotation marks omitted).

_____

[5]Indeed, Orellana argues that "if as the State concedes, the statutory language requires knowledge, the requirement should have been for the jury to find that [Orellana] *knew* or *should have known* that [Opiola] was the original aggressor." (Emphasis in original.) However, the challenged instruction explicitly included that knowledge requirement. Instruction No. 12 (providing that "[t]he right of self-defense or the defense of others is not available to an original aggressor or a person attempting to aid the original aggressor, if the person *knew* or *should have known* that the person he is aiding or attempting to aid was the original aggressor." (emphasis added)).

Although the charged crimes are serious in nature, the State presented compelling evidence of Orellana's guilt and we conclude that the cumulative effect of the two identified errors—not recording the bench conferences regarding juror questions and admitting the cell phone video—did not deprive Orellana of his right to a fair trial so as to warrant reversal.

For the foregoing reasons, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

cc:    Hon. Valerie Adair, District Judge
       Special Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk